Willard and Maxine HAAK, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Gerald G. and Barbara J. ZYLSTRA,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Simon and Caroline VISSER, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Nos. K158–73 CA 4, K74–93 CA 4
and K74–94 CA 4.

United States District Court,
W. D. Michigan.

March 21, 1978.

| | 1967 | 1968 | 1969 |
|---------|---------|---------|--------|
| Haak | $1326 | $1725 | |
| Visser | | $3850 | $2600 |
| Zylstra | | $1985 | |

The full amount of these payments was claimed in the taxable years noted by each of the plaintiffs as a deductible charitable contribution. A portion of each deduction was disallowed by the Internal Revenue Service, in the following amounts:

| | 1967 | 1968 | 1969 |
|---------|----------|-----------|----------|
| Haak | $828.75 | $945.27 | |
| Visser | | $941.00 | $890.00 |
| Zylstra | | $1627.29 | |

Plaintiffs' children attended the following schools in Kalamazoo: North Christian Grade School, South Christian Grade School, and Kalamazoo Christian High School. Each of these schools was controlled by a parent association and a school board elected by the parent association. Westwood Christian Reformed Church controlled neither the schools nor the school boards. Plaintiffs made no direct tuition payments to the schools in the years 1967, 1968, and 1969. Instead, there was a verbal understanding between the Church and the schools that the Church would pay to the schools those amounts equal to the cost of educating the children of Church members attending those schools. In formulating its proposed budget for a given year, the Church would set aside amounts approximating the cost of sending children of Church families to the schools in question, and additional amounts to be paid toward the cost of buildings belonging to the Christian School Association. The Consistory of the Church, charged with administration of the Church's financial affairs, sent out to Church members "Guidelines for Contributions" with a cover letter twice a year. A sample "Guidelines for Contributions" is attached as Appendix A. The "Guidelines" broke down the per family costs to the Church for various categories of Church expenses: tuition (School Plan Annual Cost), school building expense (Realty Assn. Annual Cost), and Church Operation Annual Cost.

Howard & Howard by Willy Nordwind, Jr., Kalamazoo, Mich., for plaintiffs.

Frank S. Spies, U. S. Atty., Grand Rapids, Mich., for defendant.

## OPINION

MILES, District Judge.

### I. INTRODUCTION

Plaintiffs are all members of the Westwood Christian Reformed Church of Kalamazoo, Michigan, and during the years in question the following payments were made to the church:

Total annual per family cost was then calculated and reduced to a weekly contribution. With the exception of the School Plan Annual Cost, all expenses were the same for each family. School Plan Annual Cost, however, varied with respect to how many children were enrolled in school. Those families without children in school were not allocated any School Plan Annual Cost, although they were allocated an amount attributable to the cost of buildings maintained by the Christian School Association.

Four times a year the Consistory sent Church members a letter indicating the financial obligations assumed by the Church for each family and what the family's contribution had been. A sample letter is attached as Appendix B. Plaintiffs were not legally obligated to pay the Church the amounts stated in the "Guidelines." Plaintiffs contributed in most years more than the guideline amount, and in some years less than the guideline amount. If a member was unable to pay the guideline amount, the member's children could still attend the schools in question and the Church would still pay the cost attributable to the children's education.

Plaintiffs filed claims with the Internal Revenue Service for refunds of those charitable deductions disallowed. The IRS has either rejected the claims or failed to act upon them within six months. These three cases have been consolidated for trial and the parties have stipulated as to the relevant facts. The issues now before the Court are primarily issues of law to be decided upon cross motions for summary judgment.

Plaintiffs allege that disallowance of that portion of their charitable deductions which the IRS attributed to payments for the cost of educating plaintiffs' children was contrary to 26 U.S.C. § 170, the section of the Internal Revenue Code permitting charitable contributions to be deducted from gross income. In addition, plaintiffs contend that disallowance of the deductions interfered with the free exercise of their religious beliefs in violation of the first amendment

and was discriminatory in violation of the fifth amendment.

## II. CHARITABLE DEDUCTION CLAIM

26 U.S.C. § 170 provides:

"(a) . . .

(1) General rule. There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. . . ."

The statute further defines a "charitable contribution" as a "contribution or gift" to

"(2) A corporation, trust, or community chest fund or foundation—

(A) created or organized in the United States . . . or under the law of . . . any State . . . ;

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and

(D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation." 26 U.S.C. § 170(c)(2).

The Internal Revenue Service contends that the payments to plaintiffs' church, allocated by the Service to the cost of educating plaintiffs' children, were not "contribution[s] or gift[s]" within the meaning of 26 U.S.C. § 170(c)(2), but were, in fact, payments for educational services.

The burden of proving that a particular payment is a "contribution or gift" is on the taxpayer. Courts have split on the appropriate test to be used in determining whether a particular transaction was a "contribution or gift." Initially, courts applied the definition of "gift" propounded by the Supreme Court in *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960) in the context of 26 U.S.C. § 102(a), excluding "gifts" from gross income. In *Duberstein* the Court determined that the transferor's intent, mo-

tive, or state of mind was the relevant factor to consider in assessing a transfer for the purposes of section 102(a). If the transfer proceeded from "detached and disinterested generosity" or "out of affection, respect, admiration, charity or like impulses," it was a "gift" for the purposes of section 102(a). 363 U.S. at 285, 80 S.Ct. at 1197, *citing Commissioner v. LoBue*, 351 U.S. 243, 246, 76 S.Ct. 800, 100 L.Ed. 1142 (1956) and *Robertson v. United States*, 343 U.S. 711, 714, 72 S.Ct. 994, 96 L.Ed. 1237 (1952). When faced with the issue whether a particular transfer constituted a "contribution or gift" under section 170, many lower courts borrowed the *Duberstein* test, and required a transfer to be motivated by "detached and disinterested generosity" or by "affection, admiration, charity, or like impulses." *DeJong v. Commissioner*, 309 F.2d 373 (9th Cir. 1962). *See also Dowell v. United States*, 553 F.2d 1233 (10th Cir. 1977); *Collman v. Commissioner*, 511 F.2d 1263 (9th Cir. 1975); *Transamerica Corp. v. United States*, 254 F.Supp. 504, 514 (N.D. Cal.1966), aff'd, 392 F.2d 522 (9th Cir. 1968).

More recently, however, courts have tended to reject the "pure" *Duberstein* test focusing on motive alone in favor of a "fundamental objective" or "quid pro quo" test.[1]

Under this test the issue is whether the transfer was "to any substantial extent, offset by the cost of services rendered to [the] taxpayers." *Oppewal v. Commissioner*, 468 F.2d 1000, 1002 (1st Cir. 1972). *See also Allen v. United States*, 541 F.2d 786 (9th Cir. 1976); *Singer Company v. United States*, 449 F.2d 413, 196 Ct.Cl. 90 (1971); *Crosby Valve & Gage Co. v. Commissioner*, 380 F.2d 146 (1st Cir.), cert. denied, 389 U.S. 976, 88 S.Ct. 477, 19 L.Ed.2d 468 (1967); *Orr v. United States*, 343 F.2d 553 (5th Cir. 1965). *Cf. Sedam v. United States*, 518 F.2d 242 (7th Cir. 1975); *Winters v. Commissioner*, 468 F.2d 778 (2d Cir. 1972); *Stubbs v. United States*, 428 F.2d 885 (9th Cir. 1970), cert. denied, 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621 (1971); *Wineberg v. Commissioner*, 326 F.2d 157 (9th Cir. 1963).

 The Court concludes that this latter test is more appropriately applied in section 170 cases.[2] The legislative history of the Internal Revenue Code of 1954 indicates that a primary factor to be considered in determining whether transaction is a charitable contribution is whether the "contribution . . . [is] made with no expectation of a financial return commensurate with the amount of the gift."[3] S.Rep.

[1] It is not clear that *Duberstein* focused solely on motive or state of mind in assessing whether a transaction was properly characterized as a gift. Although the Court discusses at length definitions of "gift" couched in terms of intent, 363 U.S. at 285, 80 S.Ct. 1190, in its final analysis the Court states:

"We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact—the dominant reason that explains his action in making the transfer. Further than that we do not think it profitable to go." 363 U.S. at 286, 80 S.Ct. at 1197.

In focusing on the "dominant reason" for the transfer, the Court appears to broaden what appeared to be a definition of "gift" based solely on the intent of the donor, to encompass any factor, including more objective indications, showing the transaction in its true light. Courts have subsequently formulated a "fundamental objective" test, which focuses on factors other than the donor's probable state of mind. *See, e. g., Oppewal v. Commissioner*, 468 F.2d 1000, 1002 (1st Cir. 1972). Such a

definition would appear to be consistent with *Duberstein*.

[2] Plaintiffs have argued that since they were under no legal obligation to reimburse the Church for educational expenses incurred on their behalf, and since they had no legal right to reimbursement should the Church fail to provide an education for plaintiffs' children, the transactions as a matter of law were gifts. This argument has frequently been raised in section 170 cases—and just as frequently rejected. *See, e. g., Winters v. Commissioner*, 468 F.2d 778 (2d Cir. 1972).

[3] This committee comment was in reference to section 162(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 162(b), which provides:

"No deduction shall be allowed . . . for any contribution or gift which would be allowable as a deduction under section 170 were it not solely for the percentage limitations, the dollar limitations, or the requirements as to the time of payment, set forth in such section,"

No. 1622, 83d Cong., 2d Sess., 1954 U.S.Code Cong. & Admin.News, pp. 4621, 4830–31; H.R.Rep. No. 1337, 83d Cong., 2d Sess., 1954 U.S.Code Cong. & Admin.News, pp. 4017, 4180. In addition, the structuring of section 170 manifests a congressional intent to focus on the use to which an alleged contribution is put, rather than on the state of mind of the transferor. In enacting section 170 Congress intended to further certain enumerated charitable objectives: religious, charitable, scientific, literary, educational purposes, or for the prevention of cruelty to children or animals. In rendering contributions to such organizations tax deductible under section 170, Congress thereby encouraged such contributions and facilitated the charitable missions of the organizations. Cf. *Crosby Valve & Gage Co. v. Commissioner*, 380 F.2d 146, 147 (1st Cir. 1967).

■ Congress was also concerned that the tax advantages accruing to charitable organizations would give them an unfair advantage over noncharitable organizations. A primary motivation of the Revenue Act of 1950 was to eliminate the dangers of this unfair competition by treating those charitable organizations engaging in business activities unrelated to their charitable purpose the same as their noncharitable competitors.[4] *See* H.R.Rep. No. 2319, 81st Cong., 2d Sess. 37 (1950). Reading the Revenue Act of 1950 (26 U.S.C. §§ 511 et seq.), in conjunction with section 170, when a charitable organization is engaged in one of the charitable activities enumerated by Congress, contributions in furtherance of those activities are to be encouraged, and are therefore properly exempt from taxation. Where contributions are merely payments for services rendered, however, they are only a quid pro quo and cannot therefore further the charitable purposes of the organization to the same extent an outright gift would. In addition, such contributions raise the danger of competition with private businesses providing similar services,

The language in the legislative history, therefore, plainly refers to section 170, and the meaning of "contribution or gift."

and to render such payments tax exempt would provide that unfair advantage feared by Congress.

In enacting section 170, it is clear that Congress was not attempting to encourage beneficent states of mind among taxpayers. A taxpayer motivated to make a charitable contribution by the prospect of a tax benefit could in no sense be considered to make the contribution with a "detached and disinterested generosity." Congress was instead attempting to facilitate the performance of various charitable purposes, listed in section 170, and courts must therefore distinguish those transactions which are in reality an exchange of cash for specific services from those transactions which are transfers for facilitation of the general charitable purpose of the organization. Thus where a transfer is made to a charitable organization with the expectation of receiving a specific tangible benefit in return, there should be no deduction under section 170.

Problems of administration of the tax laws prompt a similar conclusion. The court in *Crosby Valve & Gage Co. v. Commissioner*, 380 F.2d 146, 146–47 (1st Cir. 1967) stated:

"Were the deductibility of a contribution under section 170(c) of the Internal Revenue Code of 1954 to depend on 'detached and disinterested generosity', an important area of tax law would become a mare's nest of uncertainty woven of judicial value judgments irrelevant to eleemosynary reality. Community good will, the desire to avoid community bad will, public pressures of other kinds, tax avoidance, prestige, conscience-salving, a vindictive desire to prevent relatives from inheriting family wealth—these are only some of the motives which may lie close to the heart, or so-called heart, of one who gives to a charity. If the policy of the income tax laws favoring charitable contributions is to be effectively carried out, there is good reason to avoid unnec-

4. See 26 U.S.C. § 511, providing that income of charitable organizations from activities unrelated to their charitable purpose was subject to taxation.

essary intrusions of subjective judgments as to what prompts the financial support of the organized but non-governmental good works of society."

In addition to the difficulty of fathoming charitable intent, the *Duberstein* test is inadequate when applied in the contribution/payment situation. *Duberstein* was concerned with determining whether a transfer was a payment or a gift for the purposes of taxing it as income to the transferee. These sorts of transactions tend to be relatively isolated occurrences and not part of a continuing practice. As such, they are more suitable for subjective consideration on a case-by-case basis. In the section 170 payment/charitable contribution situation, however, the transaction is more likely to be part of a general practice than an isolated transfer. As a result, there is a greater possibility that if the governing rule is formulated subjectively, taxpayers will seek to conform their conduct to it by manifesting objectively the appropriate subjective intent. Under these circumstances, distinguishing those who had the proper intent from those who merely appear to have that intent would prove impossible, and the subjective test would cease to have any substantial meaning.

■ For these reasons, the Court concludes that if a transfer is made with the expectation of receiving a benefit, and such benefit is received, the transfer is not a charitable contribution under 26 U.S.C. § 170. In this case, the plaintiffs all expected to receive an education for their children at one of the local Christian

Schools. It is not clear whether the contributions were motivated by this expectation.[5] Although plaintiffs had no legal right to the educational services, they were expected and were, in fact, received. The Court therefore concludes that the Internal Revenue Service properly disallowed the deduction attributable to the value of the educational services provided.

## III. FREE EXERCISE CLAIM

■■ Plaintiffs contend that denial of a deduction under section 170 of the Internal Revenue Code unconstitutionally interfered with the exercise of their religious beliefs. Plaintiffs' arguments in this area are not entirely clear. In order to show that a law offends the free exercise clause of the first amendment, an individual must initially show "the coercive effect of the enactment as it operates against him in the practice of his religion." *Abington School District v. Schempp*, 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963), *quoted in Board of Educ. v. Allen*, 392 U.S. 236, 248–49, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968). There has been no such "coercive effect" shown here.

The court in *Winters v. Commissioner*, 468 F.2d 778, 781 (2d Cir. 1972) considered this problem in some detail, and noted:

"Congress clearly has the power to withhold deductions without violating the First Amendment guaranty of the free exercise of religion. *Parker v. Commissioner of Internal Revenue*, 365 F.2d 792,

5. The income and contributions to the Church of plaintiffs Haak and Visser for preceding taxable years appear to indicate tithing by these families, and their contributions may not have been motivated by the provision of educational services. The contributions and gross income of plaintiffs Zylstra indicate that tithing was not practiced by them. Under a test focusing solely on the motive of the transferor, if the transferor could establish a continued practice and pattern of contribution based on religious belief that one-tenth of one's income should be given to the church, such contributions would be proven to proceed from "detached and disinterested generosity." The facts alleged by the parties with respect to the practice of tithing among members of the Christian Reformed Church, however, complicate the matter. While tithing is encouraged by the Church, it is by no means required of all members. The Church encourages members to give to the Church according to their incomes and .their consciences, and one-tenth is set up as a guideline for the latter. Thus the amount a particular member contributes to the Church may be motivated in a belief in tithing, or it may be motivated by any one of a number of complex factors, including the "Guidelines" sent out by the Church. To distinguish those members whose contribution is based upon a bona fide belief in tithing from those who contribute for other reasons would be a nearly impossible task.

795 (8th Cir. 1966, cert. denied, 385 U.S. 1026, 87 S.Ct. 752, 17 L.Ed.2d 674 (1967). As the Supreme Court said in *Cammarano v. United States*, 358 U.S. 498, 513, 79 S.Ct. 524, 533, 3 L.Ed.2d 462 (1959):

> 'Petitioners are not being denied a tax deduction because they engage in constitutionally protected activities, but are simply being required to pay for those activities entirely out of their own pockets, as everyone else engaging in similar activities is required to do under the provisions of the Internal Revenue Code.' "

The Court finds the reasoning in *Winters* compelling, and concludes that application of section 170 to plaintiffs did not interfere with the free exercise of religion.

## IV. FIFTH AMENDMENT CLAIM

Plaintiffs also contend that disallowance of a portion of their charitable deductions was discriminatory and violated their fifth amendment rights. Plaintiffs allege it is unreasonable to distinguish between those Church members who have children in school and those members who do not. According to plaintiffs, church members believe that a religious education benefits not only the children and their parents, but also the Church and the community.

**6.** The court in *Chidsey* also notes the compelling state interest test—which plaintiffs do not argue for in this case. *See also United States v. Craven*, 478 F.2d 1329, 1338–39 (6th Cir. 1973).

**7.** In fact, if such deductions were allowed, parents would be receiving something in the nature of income that they were not taxed on—educational services. *Consider generally* Bittker & Stone, Federal Income, Estate and Gift

■ A classification is sustainable under the fifth amendment provided it is supported by a rational basis. *Chidsey v. Geurin*, 443 F.2d 584 (6th Cir. 1971).[6] The Court finds that plaintiffs' argument has some merit. The community and the church undoubtedly receive certain benefits from the religious education of plaintiffs' children. Nevertheless, plaintiffs receive not only the general benefits of the church and the community, but also the particular benefit of having their children educated. As a result, different treatment under the tax laws is rational and appropriate.[7] The Court concludes that disallowance of a charitable deduction to plaintiffs did not offend the fifth amendment due process clause.

## V. CONCLUSION

For the reasons stated the Court finds that the Internal Revenue Service properly denied a portion of plaintiffs' charitable deductions attributable to the cost of educating their children in Christian schools.[8] As a result, plaintiffs' motion for summary judgment is hereby DENIED. Defendant's motion for summary judgment is hereby GRANTED and this case shall be DISMISSED.

IT IS SO ORDERED.

### APPENDIX A to follow.

Taxation 62–67 (1972), excerpts from Vickrey, Agenda for Progressive Taxation (1947).

**8.** Plaintiffs have raised no issues concerning the appropriate amount to be disallowed, and although fixing the amount would appear to pose a difficult problem under the circumstances of this case, these issues are not before the Court.

## APPENDIX A

Guidelines for Contributions from <u>SEPTEMBER THROUGH DECEMBER</u>, 1967 – – –

| | School Plan Annual Cost | Realty Assn. Annual Cost | Church Operation Annual Cost | Total Annual Cost | Weekly Contri-bution | Weekly Bldg. Fund |
|---|---|---|---|---|---|---|
| No Children in School | – – – – – | $50.00 | $328.00 | $ 378.00 | $ 7.30 | $3.00 |
| 1 in Kinder- | $ 358.25 | 50.00 | 328.00 | 736.25 | 14.15 | 3.00 |
| 1 in Grade | 496.25 | 50.00 | 328.00 | 874.25 | 16.80 | 3.00 |
| 2 in School | 676.25 | 50.00 | 328.00 | 1054.25 | 20.25 | 3.00 |
| 3 in School | 770.00 | 50.00 | 328.00 | 1148.00 | 22.10 | 3.00 |
| 4 in School | 789.00 | 50.00 | 328.00 | 1167.00 | 22.45 | 3.00 |
| 5 in School | 796.50 | 50.00 | 328.00 | 1174.50 | 22.60 | 3.00 |
| 1 in Hi Sch. | 552.00 | 50.00 | 328.00 | 930.00 | 17.90 | 3.00 |
| 2 in Hi Sch. | 747.50 | 50.00 | 328.00 | 1125.50 | 21.65 | 3.00 |
| 3 in Hi Sch. | 747.50 | 50.00 | 328.00 | 1125.50 | 21.65 | 3.00 |
| 1 in Grade 1 in Hi Sch. | 1048.25 | 50.00 | 328.00 | 1426.25 | 27.45 | 3.00 |
| 2 in Grade 1 in Hi Sch. | 1228.25 | 50.00 | 328.00 | 1606.25 | 30.90 | 3.00 |
| 3 in Grade 1 in Hi Sch. | 1322.00 | 50.00 | 328.00 | 1700.00 | 32.70 | 3.00 |
| 4 in Grade 1 in Hi Sch. | 1341.00 | 50.00 | 328.00 | 1719.00 | 33.05 | 3.00 |
| 5 in Grade 1 in Hi Sch. | 1348.50 | 50.00 | 328.00 | 1726.50 | 33.20 | 3.00 |
| 1 in Grade 2 in Hi Sch. | 1243.75 | 50.00 | 328.00 | 1621.75 | 31.20 | 3.00 |
| 2 in Grade 2 in Hi Sch. | 1423.75 | 50.00 | 328.00 | 1801.75 | 34.65 | 3.00 |
| 3 in Grade 2 in Hi Sch. | 1517.50 | 50.00 | 328.00 | 1895.50 | 36.45 | 3.00 |
| 4 in Grade 2 in Hi Sch. | 1536.50 | 50.00 | 328.00 | 1914.50 | 36.80 | 3.00 |
| 1 in Grade 3 in Hi Sch. | 1243.75 | 50.00 | 328.00 | 1621.75 | 31.20 | 3.00 |
| 2 in Grade 3 in Hi Sch. | 1423.75 | 50.00 | 328.00 | 1801.75 | 34.65 | 3.00 |
| 3 in Grade 3 in Hi Sch. | 1517.50 | 50.00 | 328.00 | 1895.50 | 36.45 | 3.00 |
| 4 in Grade 3 in Hi Sch. | 1536.50 | 50.00 | 328.00 | 1914.50 | 36.80 | 3.00 |

The above weekly figures do not include physical education costs or bus costs; therefore, there may be a difference in your weekly individual guideline.

Appendix B to follow.

## APPENDIX B

ATTACHMENT: to returns for 1967 and 1968 of WILLARD J & MAXINE D HAAK

These letters were not submitted by t/p or by the attorney for the t/p. These are letters members of Westwood Church receive during the year regarding their contributions.

## WESTWOOD CHRISTIAN REFORMED CHURCH

620 Northampton
Kalamazoo, Michigan
October 3, 1969

Dear Mr. & Mrs. _____,

This letter is being sent to each family of the congregation to indicate what the financial obligations of the church are for each family, and what the contributions of each family have been. The financial obligations of the church for your family from January through September amounted to $_____ for the General Fund and $128.70 for the Building Fund. Our records show that during this period you have contributed $_____ to the General Fund and $_____ for the Building Fund.

During the three remaining months of this year we will have to increase our giving to take care of the increase in school costs for the new school year and to make up the present deficit in contributions. With a conscientious effort by each one we will again be able to end the year with a balanced budget.

Deuteronomy 16:17—"Every man shall give as he is able, according to the blessing of Jehovah thy God which he hath given thee."

If you have any questions concerning this letter, feel free to contact a member of the consistory.

Sincerely,
The Consistory