125 T.C. No. 14

UNITED STATES TAX COURT

MICHAEL AND MARLA SKLAR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 395-01.                    Filed December 21, 2005.


        Ps paid tuition and fees of $27,283 to two Jewish
day schools for the religious and secular education of
their five children in 1995.  That amount includes $175
that Ps paid separately for an after-school Orthodox
Jewish education class (Mishna) for one of their
children.

        Ps contend that they may deduct $15,000 of those
payments as a charitable contribution under sec. 170,
I.R.C., and that they are not liable for the accuracy-
related penalty under sec. 6662, I.R.C.

        <u>Held</u>:  None of Ps' payments for tuition, fees, and
Mishna classes in 1995 are deductible as charitable
contributions.

        <u>Held</u>, <u>further</u>, Ps are not liable for the accuracy-
related penalty under sec. 6662, I.R.C.

Jeffrey I. Zuckerman, for petitioners.

Louis B. Jack, Sherri Wilder, and Julie E. Vandersluis, for respondent.

COLVIN, Judge:  Respondent determined a deficiency of $10,198 in petitioners' Federal income tax for 1995 and an accuracy-related penalty of $2,040 under section 6662(a).[1]

After concessions,[2] the issues for decision are:

1.  Whether petitioners may deduct as a charitable contribution $15,000 of the $27,283 in tuition and fees they paid in 1995 to Orthodox Jewish day schools for the secular and religious education of their five children, including $175 they paid to one of the schools for Mishna classes.  We hold that they may not.

2.  Whether petitioners are liable for the accuracy-related penalty for 1995 because they deducted tuition payments for their children's secular and religious education.  We hold that they are not.

_____

[1]  Unless otherwise specified, section references are to the Internal Revenue Code as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Respondent concedes that petitioners are not liable for additional self-employment tax.  Thus, petitioners are not entitled to a self-employment tax deduction.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.   Petitioners

1.   Petitioners' Family and Religion

Petitioners lived in North Hollywood, California, when they filed the petition in this case.  During 1995, Michael Sklar (petitioner) was a self-employed certified public accountant. Petitioner Marla Sklar (Mrs. Sklar) was a teacher.  Petitioners are Orthodox Jews.

During 1995, petitioners had five children of school age. We refer to them by their initials:  H.S., T.S., M.S., A.S., and another T.S.  It is important to petitioners to pass to their children a devotion to their Jewish faith.

2.   Schools Attended by Petitioners' Children

Petitioners have educated all of their children at Emek Hebrew Academy (Emek) and Yeshiva Rav Isacsohn Torath Emeth Academy (Yeshiva Rav Isacsohn), private Orthodox Jewish day schools in the Los Angeles area that provide classes for boys and girls from preschool through eighth grade.

During the 1994-95 and 1995-96 school years (the school years in issue), petitioners' children attended the schools and grade levels as follows:

| Child | School Attended | School Year Jan.-June 1995 | Sept.-Dec. 1995 |
|-------|-----------------|----------------------------|-----------------|
| H.S. | Yeshiva Rav Isacsohn | 7th | 8th |
| T.S. | Emek | 6th | 7th |
| M.S. | Emek | 4th | -- |
|  | Yeshiva Rav Isacsohn | -- | 5th |
| A.S. | Emek | 1st | 2d |
| T.S. | Emek | none | preschool |

### 3. Petitioners' Educational Goals and Values

Petitioners did not consider sending their children to any school other than an Orthodox Jewish school. Petitioners sent their children to Emek and Yeshiva Rav Isacsohn because they deeply believe that they should provide their children with an Orthodox Jewish education in an Orthodox Jewish environment. Petitioners were primarily concerned with the religious component of their children's education, but they were also interested in the quality of their secular education.

### B. Emek and Yeshiva Rav Isacsohn

#### 1. General

During 1995, Emek and Yeshiva Rav Isacsohn were exempt from Federal income tax under section 501(c)(3) and qualified as organizations described in section 170(b)(1)(A)(ii); i.e., an educational organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly conducted.

Emek and Yeshiva Rav Isacsohn gave their students daily exposure to Jewish heritage and values. Students at Emek and Yeshiva Rav Isacsohn were required to adhere to traditional Orthodox Jewish dress codes.

In 1994, the Bureau of Jewish Education of Greater Los Angeles[3] mandated that all Jewish day schools in the Los Angeles area obtain academic accreditation by 2000.[4] The Western Association of Schools and Colleges, Inc. (WASC), is a regional association which accredits public and private schools, colleges, and universities in the United States. Yeshiva Rav Isacsohn became a candidate for academic accreditation by WASC on May 5, 1992. Emek became a candidate for academic accreditation by WASC on June 28, 1995. WASC granted academic accreditation to both schools after they completed a 3-year self-study program. Yeshiva Rav Isacsohn was accredited as of July 1, 1996, and Emek was accredited on July 1, 1998. Both schools were engaged in the accreditation process during part or all of 1995. Their accreditation was based in part on their programs during 1995.

---

[3] The Bureau of Jewish Education of Greater Los Angeles provides educational support services and financial assistance to Jewish day schools in the Los Angeles area and imposes eligibility requirements on schools seeking its support.

[4] Accreditation certifies to other educational institutions and to the general public that an institution meets established criteria or standards.

Both schools earned accreditation for 6 years, which is the maximum period of accreditation awarded by WASC.

2. Emek

a. General

In 1995, Emek believed its foremost goal was to help its students develop a devotion to Jewish heritage and values. Emek sought to provide a thorough and well-balanced curriculum in both Torah and secular studies so every student could succeed, upon eighth grade graduation, in the most rigorous yeshiva high schools and other institutions of higher learning.

Boys and girls had separate classes, lunch, and recess at Emek because of Orthodox Jewish religious considerations.

b. Religious Studies

The religious courses and periods of instruction at Emek were virtually the same for both of the school years in issue. On Monday through Thursday, boys had prayers from 8 to 9 a.m. and religious classes from 9 a.m. to 12:20 p.m. The school day was compressed on Friday to permit an early dismissal so that the students could be home in time for the Sabbath (which begins on Friday at sunset). On Friday, boys had religious classes from 9 to 11:40 a.m.

Girls had morning prayers each day from 8:15 to 9 a.m. On Monday through Thursday, girls had four periods of Judaic studies and afternoon prayers from 1 to 4:30 p.m. On Friday, girls had

Judaic studies from 11:40 a.m. to 12:10 p.m., followed by lunch from 12:10 to 12:30 p.m. and recess from 12:30 to 12:45 p.m. and three periods of Judaic studies from 12:45 to 2:30 p.m.

c. Secular Studies

Emek aspired to provide a high-quality secular studies program. On Monday through Thursday, boys had five secular classes from 1 to 4:30 p.m. On Friday, boys had four secular classes from 12:10 to 2:30 p.m.

On Monday through Thursday, girls had four periods of secular studies from 9 to 11:40 a.m. After lunch and recess on Monday through Thursday, girls had another period of secular studies from 12:20 to 1 p.m. On Friday, girls had four periods of secular studies from 9 to 11:40 a.m.

Emek had computer laboratories for its elementary and junior high school students. Emek did not have an elementary science enrichment teacher, a music appreciation teacher, or a full-time librarian. Emek's elementary students did not have use of a gymnasium. They shared outdoor facilities with a nearby synagogue. Emek's junior high school students had athletic facilities at Sherman Oaks, California.

d. Standardized Testing

During 1995, Emek administered the California Test of Basic Skills (CTBS) to its students. The CTBS is a grade-level-specific, nationally normed test of language skills, mathematics,

social studies, history, and science. Emek invited parents to come to the school to review their children's CTBS scores so that they could learn their children's strengths and needs. Emek also told each parent the percentile scores earned by each grade level.

e.    Mishna Class at Emek

One of petitioners' children attended a Mishna class at Emek during the first half of 1995, for which petitioners paid a separate fee of $175. Mishna is part of the Jewish oral law and is divided into six orders. The goal was for each boy to complete one order each year and to complete all six orders before completion of eighth grade.

The Mishna class was held for an hour after school and for an hour on Sunday. The Mishna class at Emek was not part of the regular curriculum.

3.    Yeshiva Rav Isacsohn

a.    General

In 1995, the primary goal of Yeshiva Rav Isacsohn was to educate its students in the tenets of the Jewish faith. Yeshiva Rav Isacsohn sought to provide a thorough and well-balanced curriculum consisting of Orthodox Judaism and secular studies. An additional goal of Yeshiva Rav Isacsohn was to prepare its students for matriculation to yeshiva high schools and to attend

a college or seminary. Yeshiva Rav Isacsohn made a concerted effort to shelter its students from smoking, alcohol, and drugs.

Boys and girls at Yeshiva Rav Isacsohn occupied separate campuses with separate principals and had no classes together. There were no joint programs, and there was no time overlap in common facilities such as the library.

b. <u>Religious Studies</u>

In 1995, fifth grade boys had morning prayer and Judaic studies from 8:25 a.m. to 2 p.m. on Monday through Thursday (including an hour for lunch and recess), from 8:25 a.m. to 12 p.m. on Friday, and from 9 a.m. to 1 p.m. on Sunday with about 45 minutes per day for prayer. In 1995, eighth grade girls began the day at 8:25 a.m. with prayer, followed by classes in religious studies until 12:15 p.m. on Monday through Thursday, and until 11:30 a.m. on Friday.

c. <u>Secular Studies</u>

In 1995, fifth grade boys had secular studies from 2 to 5 p.m. on Monday through Thursday, and from 12 to 1:30 or 2:30 p.m. on Friday, depending upon the time of year.

In 1995, from Monday to Thursday, seventh and eighth grade girls had four periods of secular studies per day from 12:55 to 4:30 p.m., with afternoon prayer from 2:30 to 2:40 p.m., and recess from 2:40 to 2:55 p.m. Girls had two periods of secular study on Fridays.

Yeshiva Rav Isacsohn had no science laboratory.  The school had a cart with science materials.  Yeshiva Rav Isacsohn had no computer room or gymnasium.  Students played in school hallways and the parking lot.  Students were sometimes taken to a nearby park.

4.   Tuition and Fees at Emek and Yeshiva Rav Isacsohn

During the school years in issue, Emek and Yeshiva Rav Isacsohn required petitioners to pay tuition, registration, and certain other fees in order for their children to attend classes. Emek and Yeshiva Rav Isacsohn required petitioners to sign an agreement promising to pay the tuition and to give to each school postdated checks covering all tuition and fees for the upcoming school year.

Both Emek and Yeshiva Rav Isacsohn provided tuition discounts to families based on financial need.  Both schools required parents seeking financial aid to submit detailed financial information to the scholarship committee for each school.  Emek and Yeshiva Rav Isacsohn provided early registration discounts, sibling discounts, and faculty discounts. Petitioners did not seek or receive financial assistance from Emek or Yeshiva Rav Isacsohn for the school years in issue.

An Orthodox Rabbinic ruling precluded either school from expelling students from the Jewish studies program during the school year for nonpayment of tuition.  However, the ruling did

not apply to expulsion from secular studies or to registration for the following school year. The schools could refuse to register a student whose tuition payments were delinquent.

If a student's tuition payments became delinquent, e.g., if a tuition check was not honored by the bank, both Emek and Yeshiva Rav Isacsohn would send letters demanding payment or threatening to bar the student from attending secular classes.

The annual income from tuition and registration fees for both schools typically covers about 65 to 75 percent of that school's annual operating expenses. The rest of the annual operating expenses are funded with grants from the Bureau of Jewish Education, interest income, and other fundraising.

C. Petitioners' Payments of Tuition and Fees

During 1995, petitioners paid a total of $27,283 to Emek and Yeshiva Rav Isacsohn for tuition, registration and other mandatory fees, and Mishna classes as follows:

| Payment | Emek | Yeshiva Rav Isacsohn |
|---|---|---|
| Tuition | $16,043 | $8,050 |
| Registration fees | 900 | 400 |
| Mishna classes | 175 | -0- |
| Other | 1,215 | 500 |
| Total | 18,333 | 8,950 |

D. Petitioners' Tax Returns

1. 1991

Petitioners filed an amended tax return for 1991 in December 1993, in which they deducted as a charitable contribution a

portion of the tuition payments they made in 1991 to their children's schools. Respondent apparently believed that petitioners were Scientologists, because in February 1994 respondent wrote to petitioners to request verification of their payments to the Church of Scientology. By letter to respondent in May 1994, petitioner stated that the deductions were based on tuition he had paid for religious education for his children.

In August 1994, respondent sent a letter to petitioners, again erroneously stating that petitioners' payments were to the Church of Scientology. Petitioner telephoned the author of that letter to say that he was not a Scientologist. By letter dated November 7, 1994, respondent told petitioners that respondent allowed in full their claim for a refund for 1991.

2. 1992-94

Petitioners filed an amended 1992 return and a 1993 return in which they deducted part of their children's tuition as a charitable contribution. Petitioners received a refund based on the amended 1993 return, and respondent did not disallow the deduction claimed on their 1993 return.

Petitioners deducted 55 percent of their payments to Emek and Yeshiva Rav Isacsohn as a charitable contribution deduction for 1994. Petitioners described the deduction on a Form 8275, Disclosure Statement, attached to their 1994 return. Respondent examined petitioners' 1994 tax return and disallowed the

charitable contribution deduction.  Litigation relating to petitioners' 1994 return is discussed below at paragraph E.

3.   1995

Petitioners timely filed their 1995 Federal income tax return on October 15, 1996.  Petitioners deducted $24,421 as a charitable contribution for 1995, including $15,000 which petitioners attributed to the cost of their children's religious education at Emek and Yeshiva Rav Isacsohn during 1995.  That amount ($15,000) is 54.97 percent (referred to here as 55 percent) of the total amount of tuition and fees that petitioners paid to Emek and Yeshiva Rav Isacsohn during 1995.  Petitioners did not file a Form 8275 or otherwise describe their payment on their 1995 return.  Respondent had petitioners' 1994 return under examination when petitioners filed their 1995 return.

Pursuant to petitioner's request, Emek and Yeshiva Rav Isacsohn issued letters to petitioner dated November 5 and November 10, 1997, respectively, in which each school estimated that 45 percent of the education provided to petitioners' children was secular and 55 percent was religious.

E.   Litigation Relating to Petitioners' 1994 Return

Petitioners filed a petition with the Court challenging respondent's notice of deficiency for 1994.  In Sklar v. Commissioner, T.C. Memo. 2000-118 (Sklar I), this Court held that petitioners could not deduct as charitable contributions amounts

for tuition and fees that they paid for their children's religious education that year. Our decision was affirmed on appeal by the U.S. Court of Appeals for the Ninth Circuit in Sklar v. Commissioner, 282 F.3d 610 (9th Cir. 2002), amending and superseding 279 F.3d 697 (9th Cir. 2002).

OPINION

A.   Whether Petitioners May Deduct Tuition and Fees They Paid to Orthodox Jewish Day Schools During 1995

1.   Petitioners' Contentions

Petitioners contend that they may deduct as a charitable contribution $15,000 of the $27,283 they paid to Emek and Yeshiva Rav Isacsohn in 1995.[5]  They deducted about 55 percent of those payments because that was the portion of the school day that each school estimated was devoted to religious studies.

Petitioners contend that:  (a) The religious education that Emek and Yeshiva Rav Isacsohn provided their children is an "intangible religious benefit" as defined in sections 170(f)(8) and 6115, and payments for intangible religious benefits are made deductible by those sections; and (b) respondent's disallowance of their charitable contribution deduction for tuition and fees violates the Establishment Clause of the First Amendment to the U.S. Constitution because the Commissioner allows members of the

---

[5]  We separately discuss whether petitioners may deduct $175 of this amount they paid for Mishna classes.  See Opinion par. A-5, below.

Church of Scientology to deduct as charitable contributions "auditing" and "training" payments.[6]

    2.    <u>Whether Petitioners' Tuition Payments Qualify for Deduction Under Section 170 Pursuant to a Dual Payment Analysis</u>

        a.    <u>Introduction</u>

To put our consideration of petitioners' contentions in context, we first consider whether petitioners' payment of tuition and fees is deductible under a dual payment analysis to the extent the payments exceed the value of the secular education received by their children. See <u>United States v. Am. Bar Endowment</u>, 477 U.S. 105 (1986); <u>Sklar v. Commissioner</u>, <u>supra</u> at 612, 614 n.3, 621. We initially consider that issue without regard to the enactment of sections 170(f)(8) and 6115 in 1993 and the Commissioner's settlement with the Church of Scientology on October 1, 1993. We then consider the effect (if any) of those developments on our analysis.

        b.    <u>Background</u>

In 1967, the Commissioner issued Rev. Rul. 67-246, 1967-2 C.B. 104, in response to:

> an increasing number of instances * * * in which the public has been erroneously advised in advertisements or solicitations by sponsors that the entire amounts

---

[6] Petitioners contend that sec. 7491(a) requires respondent to bear the burden of proof on all factual issues in the case. We need not decide the point because our findings and analysis in this case do not depend on which party bears the burden of proof.

paid for tickets or other privileges in connection with fund-raising affairs for charity are deductible. * * *

The examples that the Commissioner cited included tickets for charitable events such as banquets, balls, bazaars, concerts, and athletic events.  In Rev. Rul. 67-246, supra, the Commissioner ruled that, where a taxpayer receives an item of value for a payment to a charitable organization, (1) the payment is not deductible unless the taxpayer intends to make a gift; and (2) any deduction is limited to the excess of the payment over the fair market value of what is received in exchange.

Courts have also applied those two requirements.  Thus, a portion of a payment is deductible as a charitable contribution under section 170 if the following two conditions are met: "First, the payment is deductible only if and to the extent it exceeds the market value of the benefit received.  Second, the excess payment must be 'made with the intention of making a gift.'"  United States v. Am. Bar Endowment, supra at 117-118, (quoting Rev. Rul. 67-246, 1967-2 C.B. at 105); Sklar v. Commissioner, supra at 621.

In United States v. Am. Bar Endowment, supra at 118, the Supreme Court said:

> The sine qua non of a charitable contribution is a transfer of money or property without adequate consideration.  The taxpayer, therefore, must at a minimum demonstrate that he purposely contributed money or property in excess of the value of any benefit he received in return. * * *

A taxpayer may not deduct a payment as a charitable contribution if the taxpayer receives a substantial benefit for a payment to a charitable organization.  Id. at 116-117; Ottawa Silica Co. v. United States, 699 F.2d 1124, 1131 (Fed. Cir. 1983); Singer Co. v. United States, 196 Ct. Cl. 90, 449 F.2d 413, 420, 422 (1971); S. Rept. 1622, 83d Cong., 2d Sess. 196 (1954).  If the size of a taxpayer's payment to a charity is clearly out of proportion to the benefit received, the taxpayer may claim a charitable contribution equal to the difference between a payment to the charitable organization and the market value of the benefit received in return on the theory that the payment has the "dual character" of a purchase and a contribution.  United States v. Am. Bar Endowment, supra at 117.  To be deductible, a charitable contribution must be a gift; i.e., a transfer of property without adequate consideration.  Sec. 170(c); United States v. Am. Bar Endowment, supra at 118; Sklar v. Commissioner, supra at 612.

    c.    Dual Payment Theory and Tuition Paid for a Secular and Religious Education

It is well established that tuition paid to schools which provide both secular and religious education is not deductible as a charitable contribution because it is not paid with detached and disinterested generosity and because the payor expects a substantial benefit in return.  Oppewal v. Commissioner, 468 F.2d 1000 (1st Cir. 1972), affg. T.C. Memo. 1971-273; Winters v.

Commissioner, 468 F.2d 778, 780-781 (2d Cir. 1972), affg T.C. Memo. 1971-290; DeJong v. Commissioner, 309 F.2d 373, 377-378 (9th Cir. 1962), affg. 36 T.C. 896 (1961); Fausner v. Commissioner, 55 T.C. 620 (1971); McLaughlin v. Commissioner, 51 T.C. 233 (1968), affd. per curiam without published opinion 23 AFTR 2d 69-1763, 69-2 USTC par. 9467 (1st Cir. 1969); Bass v. Commissioner, T.C. Memo. 1983-536; Ehrhart v. Commissioner, T.C. Memo. 1981-567; Ryan v. Commissioner, T.C. Memo. 1969-212; Casey v. Commissioner, T.C. Memo. 1965-282; Haak v. United States, 451 F. Supp. 1087 (W.D. Mich. 1978); see Brotman v. Commissioner, T.C. Memo. 1977-65.

In DeJong v. Commissioner, supra, decided by the Court of Appeals for the Ninth Circuit, the taxpayer made payments to a religious organization which operated a school which imposed no explicit tuition charges. Part of the payment was deductible as a charitable contribution because the payment exceeded the amount apparently expected to be paid by the parent to cover the school's estimated cost per student of operating the secular and religious educational programs of the school. Id. at 379. That kind of excess is not in dispute here; the only amounts in dispute here were paid for tuition and fees. The Court of Appeals in DeJong did not allow a charitable contribution deduction for tuition paid for either the secular or the religious education.

d.    Absence of Charitable Intent

Like the taxpayers in the cases just cited, petitioners received a substantial benefit for their tuition payments.  We next consider whether petitioners had any charitable intent in paying their children's tuition.  See United States v. Am. Bar Endowment, 477 U.S. at 117-118; Sklar v. Commissioner, 282 F.3d at 612.  Petitioners do not so claim; and, as discussed next, the record shows they could not have made that claim successfully.

In Sklar v. Commissioner, supra at 621, the Court of Appeals said that petitioners did not show that "any dual payments they may have made exceeded the market value of the secular education their children received"; i.e., "the cost of a comparable secular education offered by private schools".  The Court of Appeals also said petitioners had "failed to show that they intended to make a gift by contributing any such 'excess payment'" and thus could not prevail under United States v. Am. Bar Endowment, supra.  Id.

The parties introduced into evidence information about tuition costs and qualitative aspects of private schools, primarily in the Los Angeles area.  The record supports the conclusion that tuition at Emek and Yeshiva Rav Isacsohn is higher than the average tuition at Los Angeles area Catholic schools, but equal to or lower than average tuition at other Los Angeles area Orthodox Jewish schools (Ohr Eliyahu Academy and

Yavneh Hebrew Academy), other Jewish day schools, and private schools which do not provide religious education.[7]

Petitioners' expert opined about the market value of a secular education provided by Emek and Yeshiva Rav Isacsohn. He apparently was proceeding from the assumption that a dual payments analysis applies in this case; i.e., that petitioners may deduct the excess of the tuition they paid over the market value of a secular education at Emek and Yeshiva Rav Isacsohn. However, more fundamentally, the record speaks to whether a dual payments analysis applies in this case at all.

Petitioners must have a charitable intent to be entitled to a deduction under section 170 for part of their tuition payments. See Sklar v. Commissioner, supra at 612; see also sec. 170(c); United States v. Am. Bar Endowment, 477 U.S. at 117-118. On the basis of evidence in the record regarding tuition at various Los

_____

[7] The record also suggests several factors that may bear on the value of an elementary and secondary education, such as teachers' salaries and seniority, whether teachers are certified, and student-teacher ratios; the amount of time students spend in classes and whether classes are held in the morning or afternoon or at different levels of difficulty; whether the school is accredited; the quality of libraries and facilities such as computer science and language laboratories, playgrounds and athletic facilities, and music and art facilities; nearness of the school to the student's home; average standardized test scores; dress codes, personal safely of students, and prevalence of disciplinary problems; the success of the students at gaining admission to secular colleges; whether the school teaches the religion of the parents; and the percent of tuition devoted to administration costs.

Angeles area schools we conclude:  (1) Some schools charge more tuition than Emek and Yeshiva Rav Isacsohn, and some charge less; and (2) the amount of tuition petitioners paid is unremarkable and is not excessive for the substantial benefit they received in exchange; i.e., an education for their children.  Thus, petitioners have not shown that any part of their tuition payments was a charitable contribution, and this case is indistinguishable from those cited at par. B-2-c.

3.  Whether Sections 170(f)(8) and 6115 Authorize Charitable Contribution Deductions for Tuition Payments to Schools Providing Religious and Secular Education

Petitioners contend that, under sections 170(f)(8) and 6115 as enacted in 1993, a portion of tuition payments to schools providing a religious and secular education is deductible as a charitable contribution.

a.  Background

Sections 170(f)(8) and 6115 were enacted under the Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, secs. 13172 and 13173, 107 Stat. 455, to address "difficult problems of tax administration"[8] associated with taxpayers' deductions of

---

[8]  See H. Rept. 103-111, at 785 (1993), 1993-3 C.B. 167, 361, which states in pertinent part:

Difficult problems of tax administration arise with respect to fundraising techniques in which an organization that is eligible to receive tax deductible contributions provides goods or services in consideration for payments from donors.  Organizations

(continued...)

charitable contributions in connection with fund-raising events involving quid pro quo transactions.  To enhance taxpayer compliance in this area, Congress imposed (a) a new substantiation requirement under section 170(f)(8),[9] and (b) a

---

[8](...continued)
that engage in such fundraising practices often do not inform their donors that all or a portion of the amount paid by the donor may not be deductible as a charitable contribution.

[9]  Sec. 170(f)(8) provides in pertinent part:

  (A) General rule.--No deduction shall be allowed under subsection (a) for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by the donee organization that meets the requirements of subparagraph (B).

  (B) Content of acknowledgment.--An acknowledgment meets the requirements of this subparagraph if it includes the following information:

    (i) The amount of cash and a description (but not value) of any property other than cash contributed.

    (ii) Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property described in clause (i).

    (iii) A description and good faith estimate of the value of any goods or services referred to in clause (ii) or, if such goods or services consist solely of intangible religious benefits, a statement to that effect.

For purposes of this subparagraph, the term "intangible religious benefit" means any intangible religious benefit which is provided by an organization organized

(continued...)

new disclosure requirement on charitable organizations under section 6115.[10]

Section 170(f)(8) generally requires a taxpayer claiming a charitable contribution deduction greater than $250 to

---

[9](...continued)
exclusively for religious purposes and which generally is not sold in a commercial transaction outside the donative context.

[10]   Sec. 6115 provides:

SEC. 6115. DISCLOSURE RELATED TO QUID PRO QUO
          CONTRIBUTIONS.

     (a) Disclosure requirement.--If an organization described in section 170(c) (other than paragraph (1) thereof) receives a quid pro quo contribution in excess of $75, the organization shall, in connection with the solicitation or receipt of the contribution, provide a written statement which--

          (1) informs the donor that the amount of the contribution that is deductible for Federal income tax purposes is limited to the excess of the amount of any money and the value of any property other than money contributed by the donor over the value of the goods or services provided by the organization, and

          (2) provides the donor with a good faith estimate of the value of such goods or services.

     (b) Quid pro quo contribution.--For purposes of this section, the term "quid pro quo contribution" means a payment made partly as a contribution and partly in consideration for goods or services provided to the payor by the donee organization.  A quid pro quo contribution does not include any payment made to an organization, organized exclusively for religious purposes, in return for which the taxpayer receives solely an intangible religious benefit that generally is not sold in a commercial transaction outside the donative context.

substantiate the deduction by obtaining a contemporaneous written acknowledgment of the contribution from the charitable organization, including an estimate of the value of any goods or services that the charitable organization provided to the taxpayer. Under section 6115, a charitable organization that receives a quid pro quo payment in excess of $75 must inform the taxpayer that any charitable contribution deduction is limited to the difference between the value of any money or property transferred to the charitable organization and the value of any goods or services that the taxpayer received from the charitable organization.

Sections 170(f)(8) and 6115 except certain intangible religious benefits from the substantiation and disclosure requirements described above. Sections 170(f)(8) and 6115 provide, inter alia, that if a charitable organization is organized exclusively for religious purposes and provides solely an intangible religious benefit to a taxpayer in exchange for a payment, the charitable organization need not assign a value to the intangible religious benefit.

b. Petitioners' Contentions

Petitioners contend that (1) sections 170(f)(8) and 6115 make tuition payments to religious schools deductible to the extent the payments relate to religious education, (2) the religious education that Emek and Yeshiva Rav Isacsohn provided

to their children was an intangible religious benefit as defined in those sections, and (3) their tuition payments are deductible to the extent that the payments exceed the value of the secular education their children received.[11] Petitioners also contend that they need not show that they intended to make a gift or contribution to Emek and Yeshiva Rav Isacsohn.

c.   Analysis

We disagree.  Congress did not change what is deductible under section 170 in these 1993 statutory changes.  Neither sections 170(f)(8) and 6115 nor the accompanying legislative history suggests that Congress intended to expand the types of payments that are deductible as charitable contributions under

---

[11]  Petitioners aver:

> if a taxpayer pays $100 to his church and receives in return a book that could be purchased in any bookstore for $20 plus the right to sit in a certain pew at the church, $80 is deductible as a charitable contribution to the church, regardless of whether having the right to sit in that pew is worth $80 or more to the taxpayer, because that right is only an intangible religious benefit.  Similarly here, to the extent petitioners' dual payments to the schools exceeded the value of the secular studies they purchased, those payments are deductible as charitable contributions notwithstanding that petitioners received religious educations for their children worth that excess, because those religious educations are only intangible religious benefits.

section 170[12] or that Congress intended to overturn the long line of cases (cited above) holding that no part of tuition paid to religious schools is deductible as a charitable contribution.[13] We believe that, if Congress had intended to overturn decades of caselaw disallowing charitable contribution deductions for tuition payments to schools providing a religious and secular education, Congress would have made such an intention clear.  It did not.

---

[12]  See H. Conf. Rept. 103-213, at 566 (1993), 1993-3 C.B. 393, 444, stating that the sec. 6115 disclosure requirement "does not apply to transactions that have no donative element (e.g., sales of goods by a museum gift shop that are not, in part, donations)."  Thus, a charitable organization need not make a sec. 6115 disclosure if the taxpayer did not intend to make a gift.

[13]  See H. Conf. Rept. 103-213, supra at 566 n.34, 1993-3 C.B. at 444, stating that the exception to the substantiation requirement for an intangible religious benefit "does not apply, for example, to tuition for education leading to a recognized degree, travel services, or consumer goods."  Along the same lines, H. Rept. 103-111, supra at 786 n.170, 1993-3 C.B. at 362, states:

> The committee intends that, in the case of religious organizations, a quid pro quo contribution (for purposes of the substantiation and disclosure requirements) is limited to an exchange of goods or services that are generally available on a commercial basis, or advertised for an established price (e.g., tuition, travel and entertainment, and consumer goods). No inference is intended, however, whether or not any contribution outside of the scope of the bill's substantiation or reporting requirements is deductible (in full or in part) under the present-law requirements of section 170.

The exception to the substantiation and disclosure requirements in sections 170(f)(8) and 6115 for intangible religious benefits does not apply to the educational services at issue here.  The exception applies only where the organization is organized exclusively for religious purposes.  Petitioners contend that Emek and Yeshiva Rav Isacsohn were organized and existed solely for the religious purpose of allowing Jewish parents to fulfill their religious obligation to teach their children Torah, which includes providing a secular education in an Orthodox Jewish environment.

We disagree that Emek and Yeshiva Rav Isacsohn were organized exclusively for religious purposes.  Emek and Yeshiva Rav Isacsohn were organized and operated to provide both a secular and a religious education.  The Commissioner granted both schools exemptions from tax under section 501(c)(3), and both schools qualify as charitable organizations described in section 170(b)(1)(A)(ii), which pertains to educational organizations.  A substantial part of each day was spent on secular studies.  Petitioners concede that the education their children received in 1995 at Emek and Yeshiva Rav Isacsohn met educational requirements imposed by the State of California.  Both schools were accredited by nonreligious accrediting agencies based in part on their secular educational programs.

Petitioners contend that Emek and Yeshiva Rav Isacsohn were organized exclusively as religious organizations because respondent excused both from filing Forms 990, Return of Organization Exempt From Income Tax.[14] We disagree. Organizations exempt from tax under section 501(a) generally are required to file Forms 990. Sec. 6033(a)(1). However, churches, exempt organizations with gross receipts of not more than $5,000, and exclusively religious activities of any religious order are exempt from that requirement. The Commissioner may relieve any exempt organization from filing a return where the Commissioner determines that filing is not necessary to the efficient administration of the internal revenue laws. Sec. 6033(a)(2)(B).

Emek and Yeshiva Rav Isacsohn do not qualify for the exception to the general filing requirement provided in section 6033(a)(2)(A). Neither school is a church, an exempt organization with gross receipts of not more than $5,000, or a religious order. Given that Emek and Yeshiva Rav Isacsohn were treated as charitable organizations described in section 170(b)(1)(A)(ii), i.e., educational organizations, we infer that the Commissioner exercised discretion under section 6033(a)(2)(B) to except Emek and Yeshiva Rav Isacsohn from filing Forms 990.

---

[14] Petitioners rely in part on a letter from respondent's counsel to petitioners' counsel that petitioners attached to their reply brief. Because the letter in question was not offered into evidence at trial, the letter was returned to petitioners unfiled and is not part of the record.

Emek and Yeshiva Rav Isacsohn provided a religious and secular education for their students.  Regardless of petitioners' reasons for choosing to educate their children at Emek and Yeshiva Rav Isacsohn, those schools did not provide exclusively religious services.[15]

4.  <u>Whether the Agreement Reached Between the Internal Revenue Service and the Church of Scientology in 1993 Affects the Result in This Case</u>

In <u>Hernandez v. Commissioner</u>, 490 U.S. 680, 702 (1989), the U.S. Supreme Court held that the record did not support the taxpayer's claim of entitlement to deduct as charitable contributions payments to the Church of Scientology for what the Church of Scientology calls auditing and training.  However, the parties stipulated that an agreement dated October 1, 1993, between the Commissioner and the Church of Scientology settled several longstanding issues.  According to a letter sent to petitioners in 1994 from the chief of the adjustments branch, Fresno Service Center, the settlement agreement between the Commissioner and the Church of Scientology allows individuals to

---

[15]  Petitioners point out that the 1993 legislative history states that the exception in secs. 170(f)(8) and 6115 for intangible religious benefits does not apply to education leading to a recognized degree.  Petitioners contend that the secular education provided by Emek and Yeshiva Rav Isacsohn does not lead to a recognized degree.  In light of our conclusion that secs. 170(f)(8) and 6115 are substantiation and disclosure provisions, we need not consider this contention further.

claim, as charitable contributions, 80 percent of the cost of qualified religious services.

Petitioners contend that, because of that closing agreement, the Commissioner is constitutionally required to allow a deduction for tuition paid to schools that provide religious and secular education to the extent that the tuition paid exceeds the value of the secular education. Petitioners contend that the religious education that the Jewish day schools provide in exchange for tuition is jurisprudentially indistinguishable from the auditing and training that the Church of Scientology provides to its members in exchange for a fixed fee.

The U.S. Court of Appeals for the Ninth Circuit previously rejected petitioners' arguments about the Church of Scientology in Sklar v. Commissioner, 282 F.3d at 619-620. Petitioners' tuition payments were made to schools that in part provide secular educational services, not to exclusively religious organizations. Thus, the analysis in United States v. Am. Bar Endowment, 477 U.S. 105 (1986), controls here. We conclude that the agreement reached between the Internal Revenue Service and the Church of Scientology referred to in the letter sent to petitioners in 1994 from respondent's Fresno Service Center does not affect the result in this case.[16]

---

[16] In Sklar v. Commissioner, 282 F.3d 610, 612 n.3 (9th Cir. 2002), affg. T.C. Memo. 2000-118, the U.S. Court of Appeals
(continued...)

5.   Whether Petitioners May Deduct Their Payment for Mishna Classes

Petitioners contend that they may deduct as a charitable contribution the $175 that they paid for Mishna classes that Emek provided separately from its regular classes and charged separately from its regular tuition and fees.  We disagree.

Petitioners' payment for Mishna classes at Emek is not made deductible merely because Emek offers those classes separately from their regular educational programs, and Emek charges, and petitioners pay, separately from Emek's other charges. Petitioners did not intend those payments to be a contribution or gift to Emek within the meaning of section 170(c).[17]

6.   Conclusion

We conclude that petitioners are not entitled to a charitable contribution deduction under section 170 for any part

---

[16](...continued)
said it is strongly inclined to the view that sec. 170 was not amended in 1993 to permit deductions for which the consideration is intangible religious benefits, and that Hernandez v. Commissioner, 490 U.S. 680, 702 (1989), is still controlling. That court also said that it need not rule definitively on this point because petitioners' claims did not meet the requirements for partial deductibility of dual payments established by United States v. Am. Bar Endowment, 477 U.S. 105 (1986).  Similarly, we have decided this case by applying United States v. Am. Bar Endowment, supra.

[17]   Emek is an educational organization, not a religious organization.  We need not consider under what circumstances payments to a religious organization for religious instruction are deductible.

of the tuition, including the fee for Mishna classes, they paid to Emek or Yeshiva Rav Isacsohn in 1995.[18]

B.  <u>Whether Petitioners Are Liable for the Accuracy-Related Penalty</u>

Respondent contends that petitioners are liable for the accuracy-related penalty under section 6662 for deducting $15,000 of their tuition.  We disagree.

Taking into account respondent's concession, petitioners' tax understatement is $3,209.  That amount is not substantial for purposes of section 6662 because it does not exceed the greater of 10 percent of the amount required to be shown or $5,000.  See sec. 6662(d)(1)(A).

Respondent contends that petitioners knew that they lacked a reasonable basis for claiming the disallowed deductions because, unlike the return they filed for 1994, petitioners did not file a Form 8275 or otherwise call attention to the deduction.  We disagree.  Respondent permitted similar deductions for petitioners' 1991, 1992, and 1993 tax returns.

Petitioners timely filed their 1995 return on October 15, 1996.  Petitioners' 1994 return was being audited when they filed their 1995 return pursuant to an extension on October 15, 1996. Petitioners filed their petition in Sklar I on January 27, 1997.

---

[18]  In light of our conclusion, we need not decide whether petitioners complied with substantiation requirements imposed by sec. 170(f)(8).

Decision was entered in that case on April 5, 2000, and affirmed early in 2002. Thus, when they filed their 1995 return, petitioners knew that respondent had allowed them to claim similar deductions for 1991-93, and they knew their 1994 return was being audited; but they did not know they would not prevail on this issue for 1994. Under these circumstances, we conclude that petitioners had a reasonable basis for claiming the deductions that respondent disallowed, and that petitioners believed in good faith that they could deduct the $15,000 for tuition and Mishna payments on their 1995 return.

To reflect concessions and the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.

[Reporter's Note: This Opinion was amended by Order dated February 6, 2006.]