T.C. Memo. 2013-20

UNITED STATES TAX COURT

AIMEE A. CVANCARA AND RYAN A. CVANCARA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24377-09.                    Filed January 17, 2013.

Aimee A. Cvancara and Ryan A. Cvancara, pro sese.

<u>Alicia E. Elliott</u> and <u>Jan Robert Cuatto</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined deficiencies in petitioners'

Federal income tax of $6,791 and $5,982 for 2005 and 2006, respectively, and

[*2] accuracy-related penalties under section 6662(a)[1] of $1,208 and $887 for 2005 and 2006, respectively.  As discussed infra pp. 7-8, respondent lodged an amended answer and moved to amend the answer after trial in this case.  We previously denied respondent's motion but, upon due reconsideration, see infra p. 9, we will grant respondent's motion in part and decide in this opinion two of the issues raised by the amended answer.  After concessions[2] and the foregoing, the issues for decision are:  (1) whether Desert Academy, LLC (Desert Academy), petitioners' jointly owned limited liability company, failed to report gross receipts of $24,483 and $21,025 for 2005 and 2006, respectively; (2) whether Desert Academy is entitled to cost of goods sold of $46,822 for 2005;[3] (3) whether petitioners had sufficient bases in Desert Academy at the end of 2005 and 2006 to

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Some monetary amounts have been rounded to the nearest dollar.

[2]Petitioners concede that they failed to report on their 2005 Federal tax return a 2004 State income tax refund of $1,315.  Respondent concedes that (1) petitioners are entitled to a deduction for educator expenses of $250 for 2005 and 2006; (2) petitioners did not receive unreported taxable income from Desert Academy in the form of fringe benefits (i.e., reduced tuition for petitioners' children) for 2006; and (3) petitioners are entitled to a deduction for home mortgage interest of $29,633 for 2006.

[3]Respondent concedes that Desert Academy is entitled to deduct $30,548 of the disallowed cost of goods sold for 2005.

**[\*3]** deduct Desert Academy's losses for those years; (4) whether, under section 1401, petitioners are liable for self-employment tax on the ordinary income, if any, from Desert Academy for 2005 and 2006; and (5) whether petitioners are liable for accuracy-related penalties under section 6662(a) for 2005 and 2006.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact are incorporated herein by this reference. Petitioners resided in Arizona when they petitioned this Court.

Background

Petitioners formed Desert Academy in 2003 to operate a private early-elementary school. Petitioners elected to treat Desert Academy as a partnership for Federal income tax purposes.[4] Desert Academy did not indicate whether it was using an accrual or a cash method of accounting on its 2003 Form 1065, U.S.

---

[4]The unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 402, 96 Stat. at 648, do not apply to Desert Academy. Desert Academy qualifies as a small partnership under sec. 6231(a)(1)(B)(i) and did not elect, pursuant to sec. 6231(a)(1)(B)(ii), to have TEFRA apply. See Wadsworth v. Commissioner, T.C. Memo. 2007-46, 93 T.C.M. (CCH) 940, 943-944 (2007) ("The small partnership exception permits this Court to review in a deficiency suit items that otherwise would be subject to partnership-level proceedings."); see also New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 173 n.3 (2009), aff'd, 408 Fed. Appx. 908 (6th Cir. 2010).

[*4] Return of Partnership Income, but it indicated that it was using an accrual method of accounting on its 2004-06 Forms 1065. The school closed in 2008.

During 2005-06 petitioners had three minor children. Their two oldest children attended Desert Academy's school during 2005-06, and their youngest child was born in 2005 and did not attend Desert Academy's school during 2005-06.

During the years at issue Ryan Cvancara was employed as a special agent in respondent's Criminal Investigation Division and Aimee Cvancara, who had earned a degree in political science from the University of Arizona, managed the day-to-day activities of, and occasionally taught classes for, Desert Academy. Mrs. Cvancara also maintained Desert Academy's records and prepared its returns.

At some point before the years at issue, Mr. Cvancara filed with respondent a Form 7995, Outside Employment or Business Activity Request, requesting permission to be involved in Desert Academy's financial management. Respondent denied Mr. Cvancara's request, and accordingly, Mr. Cvancara did not participate in Desert Academy's financial management or prepare its returns. However, Mr. Cvancara did teach an afterschool science club for Desert Academy.

Petitioners reported the ordinary income or loss from Desert Academy on Schedules E, Supplemental Income and Loss, attached to their Forms 1040, U.S.

[*5] Individual Income Tax Return, for 2003-07.[5] Petitioners reported losses of $64,413 and $50,135 from Desert Academy on their Schedules E for 2003 and 2004, respectively.

Petitioners' 2005 and 2006 Returns

Petitioners claimed passthrough losses from Desert Academy of $41,497 and $10,073 for 2005 and 2006, respectively. Mrs. Cvancara filed Desert Academy's 2005 and 2006 returns on or about May 19, 2008.[6] Desert Academy reported the following amounts on its Forms 1065 for 2005 and 2006:

| Year | Gross receipts | Cost of goods sold | Deductions | Ordinary income or loss |
|------|------|------|------|------|
| 2005 | $195,873 | $46,822 | $190,548 | ($41,497) |
| 2006 | 203,565 | 38,451 | 175,188 | (10,073) |

Mr. Cvancara authorized Mrs. Cvancara to prepare and file their joint 2005 and 2006 returns, but he did not review those returns before signing them.

---

[5]Petitioners used a Schedule C, Profit or Loss From Business, attached to their Form 1040 for 2008.

[6]On the returns, Mrs. Cvancara wrote that they were "recreated per IRS request"; however, Mrs. Cvancara testified that she did not recall filing the original returns.

**[*6]** Notice of Deficiency

On August 21, 2009, respondent issued to petitioners a notice of deficiency for 2005 and 2006.  With respect to Desert Academy, respondent included a Form 4605-A, Examination Changes--Partnerships, Fiduciaries, S Corporations, and Interest Charge Domestic International Sales Corporations.  The Form 4605-A made the following adjustments and determinations with respect to Desert Academy's 2005 and 2006 returns:

| Year | Adjustment to gross receipts | Adjustment to cost of goods sold | Total adjustments to income | Corrected ordinary, distributable net, or taxable income |
|------|------|------|------|------|
| 2005 | -0- | ($46,822) | $46,822 | $5,325 |
| 2006 | $21,025 | 42 | 20,983 | 10,910 |

Respondent adjusted Desert Academy's gross receipts for 2006 after respondent's revenue agent performed a bank deposits analysis of Desert Academy's bank accounts and determined that it had not reported all payments it received in 2006, but respondent did not adjust Desert Academy's gross receipts for 2005 because respondent's revenue agent erroneously determined that Desert Academy had reported all payments it received in 2005.  Additionally, on the Form 4605-A, respondent determined that Desert Academy's corrected income constituted net earnings from self-employment to petitioners.

**[*7]**   With respect to petitioners, respondent included a Form 4549-A, Income Tax Discrepancy Adjustments, for 2005 and 2006.  The Form 4549-A adjusted petitioners' 2005 and 2006 income to reflect respondent's adjustments to Desert Academy's 2005 and 2006 returns.

Amended Answer

After trial we held the record open to allow petitioners to produce to respondent documents underlying certain summary exhibits and to substantiate Desert Academy's cost of goods sold for 2005.  Petitioners timely produced certain documents which were later included as exhibits in a supplemental stipulation of facts and admitted into evidence.  On February 22, 2011, respondent lodged an amended answer with the Court and moved to amend the answer to conform the pleadings to the evidence.

In the lodged amended answer, respondent asserted (1) that both petitioners had bases of zero in Desert Academy at the end of 2005 and 2006 and were thus not entitled to deductions for any of Desert Academy's losses during 2005 and 2006; (2) that Desert Academy was entitled to claim cost of goods sold of only $30,548 for 2005; and (3) that Desert Academy had gross receipts of $220,356 for 2005.  Accordingly, respondent asserted an increased adjustment to petitioners' Schedule E income of $41,497 and a revised income tax deficiency of $5,259 for

[*8] 2005.  Additionally, respondent asserted an increased adjustment to petitioners' Schedule E income of $21,318 and a corresponding increase in the section 6662(a) penalty of $46.20 for 2006.

With respect to Desert Academy respondent included an amended Form 4605-A for 2005 and 2006.  The amended Form 4605-A made the following adjustments and determinations with respect to Desert Academy's 2005 and 2006 returns:

| Year | Adjustment to gross receipts | Adjustment to cost of goods sold | Total adjustments to income | Corrected ordinary, distributable net, or taxable income |
|------|------------------------------|----------------------------------|-----------------------------|----------------------------------------------------------|
| 2005 | $24,483 | ($16,274) | $40,757 | ($740) |
| 2006 | 21,360 | 42 | 21,318 | 11,245 |

With respect to petitioners respondent included a Form 5278, Statement-- Income Tax Changes, for 2005 and 2006.  The Form 5278 adjusted petitioners' 2005 and 2006 income to reflect respondent's adjustments to Desert Academy's 2005 and 2006 returns and to reflect respondent's assertion that petitioners had bases of zero in Desert Academy at the end of 2005 and 2006 and were thus not entitled to deductions for Desert Academy's losses in 2005 and 2006.

**[*9]**                                    OPINION

I.      <u>Preliminary Matters</u>

By order dated January 27, 2012, we denied respondent's motion to amend the answer to conform pleadings to the evidence because we concluded that granting the amendment at such a late stage would prejudice petitioners.  <u>See</u> <u>Howard v. Commissioner</u>, T.C. Memo. 2005-144, 89 T.C.M. (CCH) 1449, 1451 (2005) ("Prejudice to the other party is a key factor in deciding whether to allow an amendment to the pleadings.") (citing <u>Kroh v. Commissioner</u>, 98 T.C. 383, 389 (1992)).  Respondent fully briefed the issues raised in the lodged amended answer and urges us to reconsider the motion.  After a careful review of the record, we find that the parties tried by implied consent two of the issues raised in respondent's lodged amended answer.  <u>See</u> Rule 41(b)(1).  Those issues are:  (1) whether Desert Academy failed to report gross receipts of $24,483 for 2005 and (2) whether petitioners had sufficient bases in Desert Academy at the end of 2005 and 2006 to deduct Desert Academy's losses for those years.  We find that neither party will be prejudiced by our deciding these two issues without supplemental briefing.  Accordingly, we will vacate our order denying respondent's motion to conform the pleadings to the evidence and decide those issues in this opinion.

[*10] II.    Gross Receipts

The parties dispute the amount of Desert Academy's gross receipts for 2005

and 2006.  The parties' contentions can be summarized as follows:

Desert Academy's gross receipts

| Year | Per return | Per respondent | Per petitioners |
|------|-----------|----------------|-----------------|
| 2005 | $195,873 | [1]$220,356 | [2]$188,588 |
| 2006 | 203,565 | [3]224,925 | [4]206,805 |

[1]This is the amount that respondent asserted in the amended answer.  On brief, however, respondent contends that Desert Academy had gross receipts of $221,766 for 2005.

[2]Included in this amount are:  (1) $4,213 in advance payments received in 2004 but included in income for 2005; (2) $211,297 in total payments received in 2005; and (3) less $26,921 in advance payments to be included in income for 2006. Desert Academy's records for 2005 show receipts received of only $191,660. Accordingly, petitioners concede that Desert Academy's records for 2005 omit receipts of $19,637.  Petitioners' concession is based on their contention that they deposited $211,297 into Desert Academy's accounts in 2005.  Respondent contends that petitioners deposited $211,298 into Desert Academy's accounts (not including amounts petitioners paid to Desert Academy) in 2005, leaving omitted receipts of $19,638.  This $1 dispute is computational and should be resolved as part of the Rule 155 computations.

[3]A review of respondent's bank deposits analysis and Desert Academy's records reveals that respondent erroneously included $380 as receipts recorded in Desert Academy's records for 2006 but not deposited into its accounts.  In fact, the item in question was deposited into Desert Academy's accounts and was thus already included in respondent's bank deposits analysis.

[4]Petitioners stipulated an exhibit in which they calculated Desert Academy's gross receipts to be $210,319 for 2006.  Respondent subsequently identified returned checks of $2,673, leaving gross receipts of $207,646.  Included in this amount are:  (1) $26,921 in advance payments received in 2005 but included in income for 2006, (2) $218,345 in total payments received in 2006, and (3) less

**[\*11]** $37,620 in advance payments to be included in income for 2007. Desert Academy's records for 2006 show receipts received of only $214,264. Desert Academy thus omitted receipts of $4,081. However, petitioners contend on brief that Desert Academy had gross receipts of $206,805 for 2006. This $841 difference appears to be computational and should be resolved as part of the Rule 155 computations.

The parties have two principal disputes with respect to Desert Academy's gross receipts for 2005 and 2006: (1) whether Desert Academy properly accounted for advance payments it received in 2005 and 2006; and (2) whether amounts petitioners paid to Desert Academy in 2005 and 2006 were tuition for petitioners' children.

A.      Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, if the Commissioner raises a new issue or seeks an increase in a deficiency, the Commissioner has the burden of proof as to the new issue or increased deficiency. Rule 142(a)(1). Additionally, if a taxpayer produces credible evidence[7] with respect to any factual issue relevant to ascertaining the

---

[7]"Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no

(continued...)

**[*12]** taxpayer's liability for any tax imposed by subtitle A or B of the Code and satisfies the requirements of section 7491(a)(2), the burden of proof on any such issue shifts to the Commissioner. Sec. 7491(a)(1). Section 7491(a)(2) requires a taxpayer to demonstrate that he (1) complied with requirements under the Code to substantiate any item, (2) maintained all records required under the Code, and (3) cooperated with reasonable requests by the Secretary[8] for witnesses, information, documents, meetings, and interviews. See also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

The U.S. Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has held that for the presumption of correctness to attach to the notice of deficiency in unreported income cases, the Commissioner must establish some evidentiary foundation connecting the taxpayer with the income-producing activity, see Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), or demonstrating that the taxpayer actually received unreported

---

[7](...continued)
contrary evidence were submitted (without regard to the judicial presumption of IRS correctness).'" Higbee v. Commissioner, 116 T.C. 438, 442 (2001) (quoting H.R. Conf. Rept. No. 105-599, at 240-241 (1998), 1998–3 C.B. 747, 994-995).

[8]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

**[*13]** income, <u>Edwards v. Commissioner</u>, 680 F.2d 1268, 1270-1271 (9th Cir. 1982). If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer, who must establish by a preponderance of the evidence that the unreported income adjustment was arbitrary or erroneous. <u>See</u> <u>Hardy v. Commissioner</u>, 181 F.3d 1002, 1004 (9th Cir. 1999), <u>aff'g</u> T.C. Memo. 1997-97.

With respect to the unreported income adjustment for 2005, respondent concedes that he bears the burden of proof because that issue was not raised in the notice of deficiency. <u>See</u> Rule 142(a)(1). With respect to the unreported income adjustment for 2006, the parties agree that Desert Academy received the payments at issue. Accordingly, to the extent that any factual issues remain, petitioners would bear the burden of proof with respect to the unreported income adjustment for 2006, <u>see</u> <u>Hardy v. Commissioner</u>, 181 F.3d at 1004, unless they satisfy the requirements of section 7491(a)(1) and (2). However, to the extent such issues remain, we decide those issues on the preponderance of the evidence. Accordingly, we need not decide whether petitioners satisfy the requirements of section 7491(a)(1) and (2). <u>See</u> <u>Knudsen v. Commissioner</u>, 131 T.C. 185, 188-189 (2008); <u>see also</u> <u>Estate of Morgens v. Commissioner</u>, 133 T.C. 402, 409 (2009)

**[*14]** (burden of proof irrelevant where only legal issues remain), aff'd, 678 F.3d 769 (9th Cir. 2012).

### B. Desert Academy's Accrual Method

Respondent contends that advance payments of $26,922 and $37,620 received by Desert Academy in 2005 and 2006, respectively, should be included in Desert Academy's income for the years of receipt. Petitioners contend that these payments were properly included in income for 2006 and 2007, respectively, under Desert Academy's accrual method of accounting.

#### 1. Advance Payments Generally

Section 446(a) provides that "[t]axable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." A taxpayer may adopt any permissible method of accounting on the first income tax return on which an item appears. Once a permissible method is chosen, the taxpayer must secure the consent of the Secretary before adopting a new method. Sec. 446(e). A change in the method of accounting includes a change in the overall plan of accounting or a change in the treatment of any material item used in the overall plan. See sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs. (made applicable on or after December 30, 2003, by section 1.446-1(e)(4)(i), Income Tax Regs.). Section 446(b) grants the

**[\*15]** Commissioner broad discretion to require a taxpayer to use a method of accounting that, in the Commissioner's opinion, clearly reflects income.

Section 1.446-1(c)(ii)(A), Income Tax Regs., provides that "[g]enerally, under an accrual method, income is to be included for the taxable year when all the events have occurred that fix the right to receive the income and the amount of the income can be determined with reasonable accuracy." The Commissioner maintains that the "all events" test is satisfied when "(1) the required performance occurs, (2) payment therefor is due, or (3) payment therefor is made, whichever happens earliest." Rev. Rul. 74-607, 1974-2 C.B. 149, 150.

In a trilogy of cases, the Supreme Court upheld the Commissioner's determinations that unrestricted, advance payments for services were to be included in income for the year of receipt. See Schlude v. Commissioner, 372 U.S. 128 (1963); Am. Auto. Ass'n v. United States, 367 U.S. 687 (1961); Auto. Club of Mich. v. Commissioner, 353 U.S. 180 (1957); see also Johnson v. Commissioner, 108 T.C. 448, 491 (1997), aff'd in part, rev'd in part on another issue, 184 F.3d 786 (8th Cir. 1999). However, in Artnell Co. v. Commissioner, 400 F.2d 981 (7th Cir. 1968), rev'g and remanding 48 T.C. 411 (1967), the U.S. Court of Appeals for the Seventh Circuit held that the deferral of income realized from advance sales of season tickets to, and the broadcasting rights for,

[*16] professional baseball games until the year in which the games would be played could clearly reflect income. The Court of Appeals distinguished the advance payments at issue in Artnell from the advance payments at issue in the trilogy of Supreme Court cases cited above, "where the time and extent of performance of future services were uncertain." Id. at 983-984. By contrast, the Court of Appeals reasoned, the deferred income at issue in Artnell "was allocable to games which were to be played on a fixed schedule. Except for rain dates, there was certainty." Id. at 984. Since Artnell, we have indicated that we "'will not follow the rationale of that case unless the facts present a certainty, of performance or fixed dates, such as was presented in Artnell Co.'" Johnson v. Commissioner, 108 T.C. at 492 (quoting T.F.H. Publ'ns, Inc. v. Commissioner, 72 T.C. 623, 644 (1979), aff'd without published opinion, 622 F.2d 579 (3d Cir. 1980)); see also Tampa Bay Devil Rays, Ltd. v. Commissioner, T.C. Memo. 2002-248, 84 T.C.M. (CCH) 394, 399 (2002) (finding Artnell applicable).

Recognizing that limited deferral of advance payments for services is sometimes appropriate, the Commissioner has permitted accrual method taxpayers to defer certain prepaid services income for up to one year. See Rev. Proc. 71-21, 1971-2 C.B. 549; see also Rev. Proc. 2004-34, 2004-1 C.B. 991 (allowing limited deferral for certain other types of income). Rev. Proc. 2004-34, supra, which

[*17] modified and superseded Rev. Proc. 71-21, supra, provides two methods for

accounting for advance payments for accrual method taxpayers: the "Full Inclusion

Method" and the "Deferral Method" (deferral method). See Rev. Proc. 2004-34,

sec. 5, 2004-1 C.B. at 992. Under the deferral method, a taxpayer

> must --

>> (i) include the advance payment in gross income for the taxable year of receipt * * * to the extent provided in section 5.02(3) of this revenue procedure, and

>> (ii) * * * include the remaining amount of the advance payment in gross income for the next succeeding taxable year.

Id. sec. 5.02(1)(a). Rev. Proc. 2004-34, sec. 5.02(3), 2004-1 C.B. at 993, provides

that

>> (a) * * * a taxpayer using the Deferral Method must --

>> (i) include the advance payment in gross income for the taxable year of receipt * * * to the extent recognized in revenues in its applicable financial statement * * * for that taxable year, and

>> (ii) include the remaining amount of the advance payment in gross income in accordance with section 5.02(1)(a)(ii) of this revenue procedure.

>> (b) If the taxpayer does not have an applicable financial statement * * *, a taxpayer using the Deferral Method must include the advance payment in gross income for the taxable year of receipt * * * to the extent earned in that taxable year and include the remaining amount of the advance payment in gross income in accordance with section 5.02(1)(a)(ii) of this revenue procedure. The

[*18] determination of whether an amount is earned in a taxable year must be made without regard to whether the taxpayer may be required to refund the advance payment upon the occurrence of a condition subsequent. * * *

An applicable financial statement is a

financial statement listed in paragraphs (1) through (3) of this section 4.06 that has the highest priority (including within paragraph (2)). A taxpayer that does not have a financial statement described in paragraphs (1) through (3) of this section 4.06 does not have an applicable financial statement for purposes of this revenue procedure. The financial statements are, in descending priority --

(1) a financial statement required to be filed with the Securities and Exchange Commission * * *;

(2) a certified audited financial statement that is accompanied by the report of an independent CPA * * * that is used for --

(a) credit purposes,

(b) reporting to shareholders, or

(c) any other substantial non-tax purpose; or

(3) a financial statement (other than a tax return) required to be provided to the federal or a state government or any federal or state agencies (other than the SEC or the Internal Revenue Service).

Id. sec. 4.06, 2004-1 C.B. at 992.

2. Desert Academy's Use of the Deferral Method

Petitioners contend that Desert Academy elected to use an accrual method of accounting and that it was thus entitled to defer recognizing the advance

[*19] payments it received in 2005 and 2006. Further, petitioners contend that Desert Academy should be allowed to use its accrual method of accounting because respondent's revenue agent, Pauline Cox, testified that an accrual method of accounting would more clearly reflect Desert Academy's income.

Respondent contends that he was entitled to compute Desert Academy's gross receipts using the bank deposits method because (1) Desert Academy's records were "unreliable, inaccurate, and incomplete"; (2) Desert Academy accounted for its expenses on a cash basis; and (3) Desert Academy was ineligible to use the deferral method provided for in Rev. Proc. 2004-34, supra, because the advance payments were subject to a condition subsequent and were thus earned in the year of receipt.[9]

Mrs. Cvancara credibly testified that she intended from the beginning for Desert Academy to use an accrual method of accounting because the school year spans two calender years. Desert Academy did not check the box indicating whether it was using an accrual or a cash method of accounting on its 2003 Form 1065, but it affirmatively stated on its 2004-06 Forms 1065 that the information reported on those forms was calculated using an accrual method of accounting.

---

[9]Petitioners did not introduce Desert Academy's financial statements, and we infer that it did not prepare applicable financial statements within the meaning of Rev. Proc. 2004-34, sec. 4.06, 2004-1 C.B. 991, 992, for the years at issue.

[*20] And although Mrs. Cvancara testified that she mistakenly included advance payments received in 2005 for services to be rendered in 2006 on Desert Academy's 2005 Form 1065, she also included advance payments received in 2004 for services to be rendered in 2005 on Desert Academy's 2005 Form 1065. She also included advance payments received in 2005 for services to be rendered in 2006, and excluded advance payments received in 2006 for services to be rendered in 2007, on Desert Academy's 2006 Form 1065. Desert Academy's records for 2005 and 2006, although imperfect, clearly indicate which payments were to be deferred to the following year. Moreover, Revenue Agent Cox testified that she probably would have used an accrual method in determining Desert Academy's gross receipts had petitioners provided her with Desert Academy's records during the examination and that an accrual method was a more appropriate method of accounting for the advance payments at issue in this case. We find that Desert Academy (1) elected to use an accrual method of accounting, (2) elected to use the deferral method with respect to any advance payments it received, see Rev. Proc. 2004-34, supra, and (3) maintained its record of income, and calculated its income for income tax purposes, using an accrual method of accounting.

We accordingly reject respondent's first contention that Desert Academy did not use an accrual method because its records were "unreliable, inaccurate, and

[*21] incomplete". Although far from perfect, Desert Academy's records were sufficient to allow respondent to verify the amounts deferred. See Rev. Proc. 71-21, sec. 4, 1971-2 C.B. at 550.[10]

Respondent's second contention is that Desert Academy was not using an accrual method because, although it may have accounted for its income under an accrual method, it accounted for its expenses under the cash method.[11] Respondent, however, did not exercise his discretion under section 446(b), see Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979), to require Desert Academy to change its method of accounting to the cash method. Rather, respondent seems to be arguing that Desert Academy's purported use of the cash method to account for its expenses supports respondent's theory that Desert Academy never actually employed an accrual method of accounting. However, we

[10]Moreover, contrary to respondent's contention, Rev. Proc. 2004-34, supra, contains no explicit requirement that a taxpayer electing the deferral method must maintain adequate books and records to allow the Commissioner to verify the amounts deferred.

[11]The regulations specifically disallow accounting for income on the cash method and expenses on an accrual method, see sec. 1.446-1(c)(1)(iv), Income Tax Regs., and we have previously sustained the disallowance of such schemes, see Grider v. Commissioner, T.C. Memo. 1999-417, 78 T.C.M. (CCH) 1209, 1211 (1999). The regulations, however, do not specifically disallow the use of an accrual method to calculate income and the cash method to calculate expenses. See also sec. 1.162-3, Income Tax Regs. (providing that the costs for certain incidental materials or supplies can be deducted from gross income during the year they are purchased).

**[*22]** have already found that Desert Academy elected an accrual method of accounting, elected to account for advance payments it received under the deferral method, and calculated its income under an accrual method. Desert Academy's purported use of the cash method to calculate its expenses does not alter our conclusions.

Respondent's final contention is that the advance payments were subject to a condition subsequent, see Rev. Proc. 2004-34, sec. 5.02(3)(b), because parents that prepaid their children's tuition were entitled to a refund if they withdrew their children from the school. Respondent's contention is flawed, however, because it appears to be based on a misreading of Rev. Proc. 2004-34, sec. 5.02(3)(b). The revenue procedure does not make the existence of a condition subsequent controlling. Rather, it provides that the determination of whether an amount is earned in a subsequent year "must be made without regard to whether the taxpayer may be required to refund the advance payment upon the occurrence of a condition subsequent." Id. Here, because Desert Academy is entitled to retain the advance payments only if it provides the services that it agreed to provide, we determine that Desert Academy earned the advance payments in the year that the services were provided without regard to any condition subsequent. Accordingly, Desert Academy was entitled to use the deferral method for those payments.

**[\*23]** In short, we conclude that Desert Academy properly accounted for advance payments it received under the deferral method allowed under Rev. Proc. 2004-34, supra.

  C.  <u>Petitioners' Payments to Desert Academy</u>

Respondent contends that payments of $10,468 and $6,200 made by petitioners to Desert Academy during 2005 and 2006, respectively, represented tuition for two of petitioners' children.[12]  Petitioners contend that those payments were capital contributions and not tuition.

---

[12]Respondent belatedly contends on brief that petitioners have treated these payments inconsistently because they claimed a tax credit of $109 for child and dependent care expenses of $3,960 paid to Desert Academy in 2005.  <u>See</u> secs. 1.44A-4(a)(4), 1.21-4(b) (2012), Income Tax Regs.  Petitioners contend that they erroneously reported that the funds were paid to Desert Academy and that they should have provided on their return the name of a different school that petitioners' eldest son attended in 2005.

We note that petitioners did not claim child and dependent care credits on their Forms 1040 for tax years 2003 and 2004 and 2006-08, even though at least one of their children attended Desert Academy's school during at least some of those years.  We further note that respondent raised this issue for the first time on brief, and petitioners were not afforded an opportunity to produce additional evidence to support their contention.  Accordingly, to the extent that respondent is asserting that petitioners cannot claim the amount they reported as a child and dependent care expense on their 2005 Form 1040 as a capital contribution to Desert Academy, we decline to consider the argument because doing so would prejudice petitioners.  <u>See</u> <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 891-892 (1991), <u>aff'd</u>, 959 F.2d 16 (2d Cir. 1992).

**[*24]** Generally, no gain or loss is recognized to a partnership or its partners upon

the contribution of property to a partnership in exchange for a partnership interest.

Sec. 721(a); sec. 1.721-1(a), Income Tax Regs.  The contributing partner's basis in

the partnership interest is the amount of money contributed plus the adjusted basis

of other contributed property, increased by the amount of any gain recognized by

the contributing partner.  Sec. 722.  Gain is also not recognized to a partner on the

distribution of property from a partnership to a partner, except to the extent that the

distribution exceeds the partner's adjusted basis in the partnership.  Sec. 731(a)(1).

However, where a distribution is not in liquidation of a partner's interest in the

partnership, the partner's basis in the partnership is reduced by the amount of money

distributed plus the adjusted basis of other property distributed.  Sec. 733.

In certain instances the Code treats transactions between a partnership and a

partner as transactions between the partnership and a third party.  See sec. 707(a).

Section 1.707-1(a), Income Tax Regs., provides that

> [a] partner who engages in a transaction with a partnership other than
> in his capacity as a partner shall be treated as if he were not a member
> of the partnership with respect to such transaction.  Such transactions
> include, for example, loans of money or property by the partnership to
> the partner or by the partner to the partnership, the sale of property by
> the partner to the partnership, the purchase of property by the partner
> from the partnership, and the rendering of services by the partnership

[*25] to the partner or by the partner to the partnership.  * * *
However, transfers of money or property by a partner to a partnership
as contributions, or transfers of money or property by a partnership to a
partner as distributions, are not transactions included within the
provisions of this section.  In all cases, the substance of the transaction
will govern rather than its form. * * *

In short, transactions between a partnership and a partner are treated as transactions between a partnership and a third party only where the substance of the transactions is that of transactions between a partnership and a third party.  See id.; see also sec. 1.707-3(b), Income Tax Regs. (providing factors indicating that a contribution of property and a related distribution of money or property are, in substance, a disguised sale of the contributed property).

Petitioners were the only members of Desert Academy.  Over the years, petitioners made significant capital contributions to Desert Academy.  Mrs. Cvancara credibly testified that petitioners never intended for Desert Academy to charge tuition for their children and that all of their payments to Desert Academy were intended to be capital contributions.  Desert Academy did not record petitioners' payments to it as tuition received.  Additionally, the timing of petitioners' payments to Desert Academy indicates that the payments were not tuition for petitioners' children but, rather, capital contributions to cover shortfalls

[*26] in Desert Academy's operating accounts. Accordingly, we find that, in substance, these payments were capital contributions and not tuition.

Because petitioners' payments to Desert Academy were capital contributions, any amounts that Desert Academy paid on account of petitioners' children should be treated as distributions from Desert Academy to petitioners. Respondent, however, does not contend that Desert Academy distributed money or property to petitioners by not charging petitioners tuition. Rather, respondent contends that petitioners' capital contributions to Desert Academy should be recast as tuition payments because Desert Academy was required to charge petitioners tuition.

To support this contention respondent cites cases in which we sustained the disallowance of charitable contribution deductions on the grounds that the payments in question were not charitable contributions under section 170 but rather tuition payments. See DeJong v. Commissioner, 36 T.C. 896, 899-900 (1961), aff'd, 309 F.2d 373 (9th Cir. 1962); Oppewal v. Commissioner, T.C. Memo. 1971-273, 30 T.C.M. (CCH) 1177, 1178 (1971), aff'd, 468 F.2d 1000 (1st Cir. 1972); see also Sklar v. Commissioner, 125 T.C. 281, 291-292 (2005), aff'd, 549 F.3d 1252 (9th Cir. 2008). In DeJong v.Commissioner, 36 T.C. at 899, we held that, as used in section 170, "the term 'charitable contribution' is synonymous

**[*27]** with the word 'gift'" and that "[i]f a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift".  Accordingly, in the cases respondent cites, we found that the payments at issue were made with the anticipation of receiving a substantial benefit in return and were thus not charitable contributions.  See id. at 899-900; Oppewal v. Commissioner, 30 T.C.M. (CCH) at 1178; see also Sklar v. Commissioner, 125 T.C. at 292.

The reasoning of these cases, however, is inapplicable here for two reasons. First, DeJong and Oppewal construed the term "charitable contribution" as it is used in section 170.  By contrast, the issue here is whether the nonrecognition provisions of section 721 apply to petitioners' payments to Desert Academy. Section 170 and section 721 serve entirely different purposes, and our cases applying the term "charitable contribution" in section 170 do not control our interpretation of the term "contribution" as it is used in section 721.  Second, and more importantly, we have found that petitioners' payments to Desert Academy were, in substance, capital contributions and not tuition.  That is, petitioners did not make the payments at issue in anticipation of receiving a benefit from Desert Academy.  Rather, petitioners made the payments at issue because Desert Academy required capital contributions to continue operating.  By contrast, in the

[*28] cases respondent cites, we found that the taxpayers made the payments at issue only because they anticipated receiving a substantial benefit in return. See DeJong v. Commissioner, 36 T.C. at 899-900; Oppewal v. Commissioner, 30 T.C.M. (CCH) at 1178.

Accordingly, we conclude that petitioners' payments to Desert Academy in 2005 and 2006 were capital contributions and not tuition.

III. Self-Employment Income

As we have concluded that Desert Academy properly accounted for advance payments it received in 2005 and 2006 under the deferral method, see supra pp. 18-23, and that amounts petitioners paid to Desert Academy constituted capital contributions and not tuition, see supra pp. 23-28, Desert Academy had no net income during 2005 or 2006. Accordingly, petitioners are not liable for self-employment tax for 2005 or 2006. See secs. 1401(a), 1402(a).[13]

IV. Cost of Goods Sold

Respondent concedes that Desert Academy was entitled to cost of goods sold of $30,548 for 2005. Petitioners contend that Desert Academy was entitled to cost of goods sold of $47,266 for 2005.

---

[13]We therefore need not decide whether Mr. Cvancara is a limited partner under sec. 1402(a)(13). See Renkemeyer, Campbell & Weaver, LLP v. Commissioner, 136 T.C. 137, 149-150 (2011).

[*29] We note at the outset that it does not appear that Desert Academy maintained inventories of merchandise that it sold to customers. The amount that Desert Academy claimed as cost of goods sold in reality consists of expenses paid or incurred in carrying on Desert Academy's educational business. We analyze petitioners' claim for additional cost of goods sold accordingly.

A.    In General

Section 162(a) permits a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business. See Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971). A trade or business expense is ordinary for purposes of section 162 if it is normal or customary within a particular trade, business, or industry, and it is necessary if it is appropriate and helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Section 262(a) disallows deductions for personal, living, or family expenses. See also sec. 1.162-17(a), Income Tax Regs.

Generally, a taxpayer must maintain adequate records to substantiate the amounts of his or her income and entitlement to any deductions or credits claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. When a taxpayer establishes that he or she paid or incurred a deductible expense but does not establish the amount of the expense, we may estimate the amount allowable in some circumstances (the

**[*30]** Cohan rule).  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), aff'g in part, rev'g in part 11 B.T.A. 743 (1928).  There must be sufficient evidence in the record, however, to permit us to conclude that the taxpayer paid or incurred a deductible expense in at least the amount allowed.  See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  In estimating the amount allowable, we bear heavily upon the taxpayer who failed to maintain required records and to substantiate deductions as the Code requires.  See Cohan v. Commissioner, 39 F.2d at 544.

For certain kinds of business expenses, section 274(d) overrides the Cohan rule.  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).  Under section 274(d), a taxpayer must satisfy strict substantiation requirements before a deduction is allowable.  These strict substantiation requirements apply to any traveling expense, including meals and lodging away from home, any item with respect to an activity in the nature of entertainment, or the use of listed property, as defined in section 280F(d)(4), including passenger automobiles and, for the years at issue, cellular telephones.

To deduct these expenses, the taxpayer must "substantiate[] by adequate records or by sufficient evidence corroborating the taxpayer's own statement":  (1) the amount of the expense or other item; (2) the time and place of travel,

**[*31]** entertainment, or use of the property; (3) the business purpose of the expense or other item; and (4) the business relationship of the taxpayer to the persons entertained or using the property. Sec. 274(d). To satisfy the requirements of section 274(d), a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use. Sec. 1.274-5T(c)(1) and (2), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985). Although a contemporaneous log is not required, corroborative evidence created at or near the time of the expenditure to support a taxpayer's reconstruction "of the elements * * * of the expenditure or use must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra.

### B. Burden of Proof

Generally, the taxpayer bears the burden of proving that he is entitled to any claimed deduction. See Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). This includes the burden of substantiation. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), (e), Income Tax Regs. If, however, a taxpayer produces credible evidence with respect to any factual issue relevant to

[*32] ascertaining the taxpayer's tax liability for any tax imposed by subtitle A or B of the Code and satisfies the requirements of section 7491(a)(2), the burden of proof on any such issue shifts to the Commissioner. Sec. 7491(a)(1). However, because we decide the factual issues with respect to Desert Academy's claimed cost of goods sold on the preponderance of credible evidence and not on any failure to carry the burden of proof, we need not decide whether petitioners satisfy the requirements of section 7491(a)(1) and (2). See Estate of Jorgensen v. Commissioner, 431 Fed. Appx. 544, 547 (9th Cir. 2011), aff'g T.C. Memo. 2009-66; Blodgett v. Commissioner, 394 F.3d 1030, 1039 (8th Cir. 2005), aff'g T.C. Memo. 2003-212; Knudsen v. Commissioner, 131 T.C. at 188-189.

C.     Disputed Items

Initially, respondent disallowed Desert Academy's 2005 cost of goods sold in its entirety. Petitioners introduced into evidence a document purporting to be a summary of Desert Academy's cost of goods sold for 2005. Mrs. Cvancara testified that this document was initially created during 2005 and the beginning of 2006 but that it had been amended several times since. Mrs. Cvancara further testified that she retained the original summary document as well as the receipts and bank statements that she used to create the summary document. We held the record open after trial to allow petitioners to submit to respondent and, through a

**[*33]** supplemental stipulation, to the Court, the original summary document and any supporting documents. After trial, petitioners submitted an additional amended summary document and various supporting receipts and bank statements but did not submit the original summary document. After receiving the supporting receipts and bank statements, respondent conceded that Desert Academy had cost of goods sold of $30,548 for 2005. The amended summaries and the supporting documents were included in a supplemental stipulation of facts filed on April 11, 2011, and the attached documents were admitted into evidence without objection, but petitioners have offered no specific testimony to explain the business purpose of the various disputed items. Without testimony or other evidence as to the business purpose of the disputed items, we cannot know whether many of the disputed items had a business purpose. Moreover, we cannot assume that certain disputed items had a business purpose because some of the receipts that petitioners introduced appear to show that some of the expenses were for Mrs. Cvancara's personal expenses. Accordingly, as petitioners bear the burden of proof, we can allow only those items the business purpose of which is apparent.

The parties refer to the disputed items by the number assigned to each item in the summary document petitioners introduced, and for the convenience of the parties, we will refer to them accordingly. The disputed items fall into three

[*34] general categories: (1) items respondent disallowed because petitioners failed to satisfy the section 274(d) substantiation requirements with respect to those items; (2) items respondent disallowed because they lacked a business purpose; and (3) items respondent disallowed because petitioners were unable to produce legible, detailed receipts to substantiate the claimed expenses.[14]

### 1. Items Inadequately Substantiated Under Section 274(d)

Respondent disallowed several items that relate to expenses for meals, entertainment, cellular telephones, and the use of a passenger automobile. To deduct these expenses, petitioners are required to satisfy the strict substantiation requirements of section 274(d).

Items 8, 9, 111, 226, 235, 239, 245, and 315 are charges totaling $259 incurred at various restaurants and eateries. Petitioners failed to produce credible evidence with respect to the persons entertained or the business purpose of these items. Accordingly, we sustain respondent's disallowance of these items.

Items 22, 52, 115, 153, 171, 204, 223, 246, 292, 337, 379, and 406 are charges totaling $850 for cellular telephone services and accessories. Petitioners

---

[14]Additionally, Desert Academy's records show item 16 as an expense of $2.81, but the receipt provided by petitioners shows $2.19. We accordingly sustain respondent's adjustment to item 16.

**[*35]** failed to produce credible evidence with respect to the business purpose of these items. Accordingly, we sustain respondent's disallowance of these items.

Items 26, 104, 112, 227, 261, 262, 278, 340, 352, 357, and 408 are charges totaling $415 incurred at various gas stations. Petitioners failed to produce credible evidence with respect to the business purpose of these items. Accordingly, we sustain respondent's disallowance of these items.

### 2. Items Lacking a Business Purpose

Respondent disallowed several items, or parts thereof, that he deemed personal, or otherwise not business, expenses. Petitioners contend that the disallowed expenses were business expenses and should have been allowed.

After reviewing these disputed items, we find that some of the items had a business purpose and some were personal expenses. We are unable to determine whether the rest of the items had a valid business purpose. Because petitioners bear the burden of proof, we cannot allow those items, or parts thereof, the business purpose of which is not apparent. See Rule 142(a)(1). Accordingly, in the table that follows, we set out with respect to each of these items (1) the amount petitioners claimed, (2) the amount respondent allowed, (3) the amount we allow

**[*36]** as a valid business expense, and (4) the amount of the disallowed expenses that we determine to be personal expenses.[15]

| Item | Amount claimed by petitioners | Amount allowed by respondent | Allowed as business expenses | Personal expenses |
|---|---|---|---|---|
| 11 | $13.78 | $8.97 | [1]$13.78 | -0- |
| 17 | 50.67 | -0- | [2]2.49 | [3]$4.24 |
| 18 | 64.38 | -0- | -0- | -0- |
| 25 | 48.14 | 32.54 | 32.54 | -0- |
| 62 | 97.28 | -0- | [4]97.28 | -0- |
| 81 | 7.61 | -0- | -0- | -0- |
| 91 | 178.38 | 151.83 | [5]170.19 | -0- |
| 94 | 40.38 | 31.89 | [6]33.64 | [7]6.68 |
| 123 | 31.22 | 17.64 | 17.64 | [8]2.78 |
| 125 | 43.28 | 9.96 | 9.96 | [9]14.65 |
| 128 | 42.28 | 27.34 | 27.34 | [10]2.99 |
| 155 | 15.26 | 12.48 | [11]13.27 | [12]1.99 |
| 169 | 85.36 | 75.00 | 75.00 | [13]6.37 |
| 190 | 17.25 | -0- | -0- | [14]2.11 |
| 191 | 13.70 | -0- | [15]13.70 | -0- |
| 210 | 33.66 | 23.69 | [16]33.66 | -0- |
| 216 | 9.72 | -0- | -0- | -0- |
| 232 | 15.65 | 12.20 | 12.20 | [17]3.67 |
| 241 | 93.70 | 50.81 | 50.81 | -0- |
| 243 | 93.73 | 49.53 | 49.53 | [18]22.32 |
| 247 | 2.48 | -0- | [19]1.49 | -0- |

[15]We specifically find that some of the disallowed expenses were personal expenses because, as discussed infra pp. 47-49, we find that petitioners are liable for an accuracy-related penalty for an underpayment of tax attributable to negligence or disregard of rules and regulations, see sec. 6662(a), (b)(1), with respect to amounts we determine to be personal expenses but not with respect to the other disallowed expenses that we do not allow in this part.

[*37]

| | | | | |
|---|---|---|---|---|
| 253 | 9.27 | 2.97 | [20]3.21 | [21]6.06 |
| 260 | 171.29 | 82.51 | [22]88.22 | [23]0.44 |
| 268 | 90.20 | 63.82 | 63.82 | [24]14.64 |
| 277 | 23.51 | 15.47 | 15.47 | [25]1.04 |
| 284 | 5.98 | -0- | [26]5.98 | -0- |
| 285 | 28.82 | -0- | -0- | -0- |
| 301 | 37.63 | 31.47 | 31.47 | -0- |
| 317 | 18.98 | -0- | -0- | -0- |
| 319 | 10.15 | 5.48 | [27]9.15 | [28]1.00 |
| 322 | 153.04 | 97.86 | 97.86 | [29]10.25 |
| 324 | 31.78 | 29.00 | 29.00 | -0- |
| 325 | 63.86 | 29.16 | [30]31.52 | [31]1.26 |
| 328 | 32.43 | 25.10 | [32]27.87 | -0- |
| 333 | 36.64 | 21.13 | 21.13 | [33]2.00 |
| 338 | 49.29 | 40.85 | [34]44.16 | -0- |
| 341 | 24.99 | 11.00 | [35]13.67 | -0- |
| 351 | 61.78 | 43.79 | [36]45.17 | [37]2.16 |
| 356 | 31.38 | -0- | [38]27.50 | -0- |
| 361 | 36.72 | 29.02 | 29.02 | [39]3.14 |
| 364A | 49.98 | 41.90 | [40]46.52 | [41]3.74 |
| 365 | 51.60 | -0- | -0- | -0- |
| 377 | 23.69 | 15.76 | 15.76 | -0- |
| 380 | 7.77 | -0- | [42]7.77 | -0- |
| 407 | 18.38 | -0- | -0- | -0- |
| 409 | 10.81 | -0- | -0- | -0- |
| Total | 2,077.88 | 1,090.17 | 1,308.79 | 113.53 |

[1]Respondent did not include the markup of this receipt, and we see no reason not to allow the full amount.

[2]We allow the milk. Respondent's notes on several receipts indicate that Desert Academy served snacks and drinks to its students. Accordingly, we allow expenses that serve this business purpose. All adjustments in this table reflect tax shown on the receipt.

[3]We find that the children's medicine is a personal expense.

[4]We allow the router as a business expense.

[*38] [5]We allow the training pants as a business expense.

[6]We allow the pop tarts. See supra table note 2.

[7]We find that the drinks are personal.

[8]We find that the coffee and water are personal.

[9]We find that the candy, drinks, and medicine are personal.

[10]We find that the coffee is personal.

[11]We allow the tax on the allowed items.

[12]We find that the coffee is personal.

[13]We find that the nursing pads are personal.

[14]We find that the coffee is personal.

[15]We allow the résumé paper as a business expense, and respondent disallowed the remaining items only because the cost of the résumé paper was illegible. Accordingly, we allow this item in full.

[16]We allow the plants as a business expense.

[17]We find that the coffee is personal.

[18]We find that the infant formula and cookies are personal.

[19]We allow the milk. See supra table note 2.

[20]We allow the tax on the allowed item.

[21]We find that the coffee and the coffee cake are personal.

[22]We allow the tax on the allowed items.

[23]We find that the chocolate is personal.

[24]We find that the backpack and the soda are personal.

[25]We find that the infant bottle is personal.

[26]We allow the fruit snacks, see supra table note 2, and the other items are not claimed.

[27]We allow the plates as a business expense.

[28]We find that the mocha drink is personal.

[29]We find that the shampoo is personal.

[30]We allow the tax on the allowed items.

[31]We find that the gum and chocolate are personal.

[32]We allow the popcorn. See supra table note 2.

[33]We find that the Mars Snickers bar is personal.

[34]We allow the tax on the allowed items.

[35]We allow the oatmeal. See supra table note 2.

[36]We allow the milk. See supra table note 2.

[37]We find that the Sunday paper is personal.

[*39] [38]We allow the Incredibles DVD as a business expense.  We also allow the juice and the popcorn.  See supra table note 2.

[39]We find that the coffee is personal.

[40]We allow the milk and the juice.  See supra table note 2.

[41]We find that the medicine is personal.

[42]We allow the plastic cutlery, the cups, and the whipped cream.  See supra table note 2.

### 3. Items Lacking Legible Receipts

Respondent disallowed several items for which there were no receipts or the receipts were illegible.[16]  Petitioners failed to provide documentation showing that items 49, 55, 138, 146, 186, and 349, which are expenses totaling $688, were paid by Desert Academy, and we accordingly sustain respondent's disallowance of these items.[17]  Petitioners, however, have shown that Desert Academy paid the rest of these disputed items.

Items 36, 93, 158, 209, 212, and 266 are expenses totaling $3,215.  Respondent disallowed item 36 because petitioners provided only an invoice from Xerox.  But the bank statement for January shows that the claimed amount was

---

[16]These are items 2, 5, 6, 12, 20, 23, 24, 27, 28, 32, 36, 39, 40, 45, 48, 49, 51, 55, 56, 57, 58, 63, 66, 67, 68, 69, 73, 74, 82, 84, 89, 92, 93, 95, 98, 103, 105, 118, 138, 140, 141, 146, 158, 179, 181, 182, 186, 192, 196, 203, 208, 209, 212, 219, 220, 230, 231, 240, 254, 257, 266, 269, 270, 281, 291, 297, 321, 330, 335, 349, 358, 360, 367, 372, 378, 396, 399, 401, 402, 405, 410, and 411.

[17]Although petitioners did not identify item 84, a corresponding charge, dated March 3, is noted on Desert Academy's bank statement.

**[*40]** paid.  Item 93 is a check to Great American for fundraising activities.  Item 158 is a check for golf lessons for some of Desert Academy's students.  Item 209 is a receipt for postage.  Item 212 is a check to AZ Images for advertising services.  Respondent disallowed item 212 because no receipt or invoice was provided; but the invoice for item 176, which respondent allowed, shows that Desert Academy entered into a three-month contract with AZ Images for a one-quarter-page ad, and item 212 appears to be the payment for the third month of that contract.  Item 266 is a check for legal fees paid to Boates & Crump.  Respondent disallowed item 266 because no documentation was provided, but the bank statement for September shows that a check in the amount claimed was paid on September 21, 2005, and respondent allowed other related legal expenses.  Accordingly, we allow these items.

Items 68, 69, 269, and 270 are payments totaling $6,128.  Petitioners contend that these items represent payments on Desert Academy's credit cards.  Petitioners have not introduced the credit card statements into evidence, and we cannot determine whether these payments are for expenses properly deducted in prior years.  Accordingly, we sustain respondent's disallowance of these items.

The rest of these items are expenses totaling $4,175.  With respect to these items petitioners have shown that Desert Academy paid the amounts claimed.

**[*41]** Petitioners, however, have not produced legible, itemized receipts for these items. Because we have sustained some of respondent's determinations with respect to the items that petitioners have substantiated with legible, itemized receipts, we cannot allow these items in full. We will, however, apply the Cohan rule because we are convinced that a significant percentage of these expenses were deductible business expenses, see Rodriguez v. Commissioner, T.C. Memo. 2009-22, 97 T.C.M. (CCH) 1090, 1096 (2009) (applying the Cohan rule where the taxpayer pervasively intermingled business and personal expenses) (citing Feingold v. Commissioner, T.C. Memo. 1956-214), and respondent has not asserted that any of these items are subject to the strict substantiation requirements of section 274(d). We estimate that 50% of these items were business expenses. Accordingly, we allow Desert Academy to deduct 50% of these items.

V.     Petitioners' Bases in Desert Academy

Generally, a partner may deduct the partner's distributive share of losses of a partnership in which the partner is a member. Sec. 702(a). However, a partner's distributive share of a partnership's loss is allowed only to the extent of the partner's adjusted basis in the partnership. Sec. 704(d); sec. 1.704-1(d)(1), Income Tax Regs. Any additional loss is allowed as a deduction "at the end of the partnership year in which such excess is repaid to the partnership." Sec. 704(d).

**[\*42]** Respondent made no determinations in the notice of deficiency with respect to whether petitioners had sufficient bases in Desert Academy to deduct Desert Academy's losses for 2005 and 2006. Accordingly, respondent concedes that he bears the burden of proving that petitioners lacked sufficient bases in Desert Academy to deduct those losses. See Rule 142(a)(1).

Respondent contends that petitioners each had a basis of zero in Desert Academy during 2005 and 2006. Petitioners contend that they had sufficient bases in Desert Academy to deduct the claimed losses. Specifically, petitioners contend that they made net contributions to Desert Academy of $104,205, $45,150, $25,107, and $8,097 for 2003, 2004, 2005, and 2006, respectively.

Respondent contends that petitioners introduced evidence showing only that they made capital contributions to Desert Academy of $72,980 and $8,136 during 2003 and 2005, respectively. Respondent contends that petitioners presented no evidence to support their position that they made any capital contributions to Desert Academy during 2004 and 2006. Respondent further contends that petitioners had bases of zero in Desert Academy at the end of 2005 and 2006 because petitioners had already claimed losses from Desert Academy of $64,413 and $50,135 for 2003 and 2004, respectively.

[*43] Respondent's contentions miss the mark. Respondent bears the burden of proving that petitioners lacked sufficient bases to deduct Desert Academy's losses for 2005 and 2006. Respondent has produced no evidence supporting his adjustments to petitioners' claimed net capital contributions for 2003 and 2005.[18] Respondent has produced no evidence supporting his contention that petitioners made no capital contributions in 2004 and 2006. Additionally, we have concluded that petitioners' payments to Desert Academy in 2005 and 2006 were capital contributions and not tuition. See supra pp. 23-28. Accordingly, we find that respondent has not met his burden of showing that petitioners had insufficient bases in Desert Academy at the end of 2005 and 2006 to deduct Desert Academy's claimed losses.

VI.    Accuracy-Related Penalty Under Section 6662(a)

Section 6662(a) and (b)(1) and (2) authorizes the Commissioner to impose a 20% penalty on an underpayment of tax that is attributable to, among other things, (1) negligence or disregard of rules or regulations or (2) any substantial understatement of income tax. Only one section 6662 accuracy-related penalty

---

[18]Respondent determined that $404 and $1,049 of petitioners' claimed capital contributions for 2003 and 2005, respectively, were personal expenses. Even if we were to agree with these adjustments, petitioners would still have more than sufficient bases in Desert Academy to deduct the claimed losses for 2005 and 2006.

**[*44]** may be imposed with respect to any given portion of an underpayment. New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 Fed. Appx. 908 (6th Cir. 2010); sec. 1.6662-2(c), Income Tax Regs.

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs. "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs. Disregard of rules or regulations "is 'careless' if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position" and "is 'reckless' if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe." Sec. 1.6662-3(b)(2), Income Tax Regs.; see also Neely v. Commissioner, 85 T.C. 934, 947 (1985). An understatement means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual

[*45] if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty does not apply with respect to any portion of the underpayment for which the taxpayer shows that there was reasonable cause and that the taxpayer acted in good faith. Sec. 6664(c)(1). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id.

The Commissioner bears the burden of production with respect to the taxpayer's liability for the section 6662(a) penalty and must produce sufficient evidence indicating that it is appropriate to impose the penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer had

**[\*46]** reasonable cause or substantial authority for the position.  See <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447.

Respondent contends that petitioners are liable for the section 6662(a) accuracy-related penalty for 2005 and 2006 because the underpayments of tax were attributable to either (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax.  In particular, respondent contends that the record shows that petitioners failed to keep adequate books and records, failed to cooperate with respondent, and regularly mixed personal and business expenses.  Additionally, respondent observes that petitioners are well-educated, intelligent individuals and Mr. Cvancara is employed as a special agent with the Internal Revenue Service.  Accordingly, respondent contends that petitioners' conduct falls far below the standard of reasonable care.

Petitioners contend that Desert Academy's records were generally accurate and sufficient and that Mr. Cvancara's employment with respondent should not be held against petitioners because respondent prohibited Mr. Cvancara from participating in Desert Academy's finances and tax return preparation.

**[*47]** A.   <u>Negligence or Disregard of Rules and Regulations</u>

      1.   <u>Gross Receipts</u>

Mrs. Cvancara failed to record significant amounts of Desert Academy's receipts for 2005 and 2006. We find that Mrs. Cvancara was negligent in failing to accurately maintain Desert Academy's records with respect to the receipts omitted from Desert Academy's records. <u>See</u> sec. 1.6662-3(b)(1), Income Tax Regs. Accordingly, to the extent that petitioners underpaid their Federal income taxes for 2006 on account of Mrs. Cvancara's failure to accurately maintain Desert Academy's records of its receipts, we conclude that respondent has met his burden of producing evidence showing that petitioners' underpayment of tax was attributable to negligence or disregard of rules and regulations and that petitioners have not satisfied their burden of showing that Mrs. Cvancara was not negligent or that she acted with reasonable cause and in good faith.[19]

---

[19]As we have concluded that Desert Academy properly accounted for advance payments it received in 2005 and 2006 under the deferral method, <u>see</u> <u>supra</u> pp. 18-23, and that petitioners' payments to Desert Academy in 2005 and 2006 were capital contributions and not tuition, <u>see</u> <u>supra</u> pp. 23-28, Desert Academy overstated its gross receipts for 2005. Accordingly, no part of the underpayment of tax for 2005 will be attributable to petitioners' failure to accurately record Desert Academy's receipts.

**[\*48]**     2.     <u>Cost of Goods Sold</u>

For 2005 Mrs. Cvancara (1) did not satisfy the strict substantiation requirements of section 274(d) with respect to the items subject to those requirements, <u>see</u> sec. 1.6662-3(b)(1),[20] (2) erroneously claimed personal expenses as Desert Academy's business expenses,[21] and (3) erroneously deducted Desert Academy's credit card payments.[22] Petitioners have not introduced credible evidence showing that Mrs. Cvancara acted with reasonable cause or in good faith in claiming these deductions. Accordingly, we conclude that, with respect to these items, respondent has met his burden of producing evidence showing that petitioners' underpayment of tax was attributable to Mrs. Cvancara's negligence or disregard of rules and regulations and that petitioners have not satisfied their burden of showing that Mrs. Cvancara was not negligent or that she acted with reasonable cause and in good faith.

However, with respect to the rest of the items, where we have sustained, in whole or in part, respondent's determinations, a different conclusion obtains. We sustained respondent's determinations with respect to these items because the

---

[20]These are the items discussed <u>supra</u> part IV.C.1.

[21]These are the items we found to be personal expenses <u>supra</u> part IV.C.2.

[22]These are items 68, 69, 269, and 270, discussed <u>supra</u> part IV.C.3.

[*49] business purpose of the expenses in question was not obvious from the substantiation offered, and petitioners did not fill that gap with any testimony. Respondent, however, bears the burden of production with respect to penalties. See sec. 7491(c). Respondent has not introduced evidence showing that any of these items were not business expenses. Mrs. Cvancara maintained a running log of Desert Academy's expenses and retained the supporting bank statements and many of the receipts. We find that Desert Academy's expense records complied with the Code's recordkeeping requirements, see sec. 1.6662-3(b)(1), Income Tax Regs., and respondent has not asserted that any of these items were subject to the strict substantiation requirements of section 274(d), see id. Accordingly, with respect to the rest of respondent's determinations, we conclude that respondent has not met his burden of producing evidence that the underpayment of tax was attributable to negligence or disregard of rules or regulations.[23]

B.    Substantial Understatement

Alternatively, to the extent that the Rule 155 computations show that the understatement of tax for 2005 or 2006 exceeds the greater of 10% of the tax

_____

[23]We note that, to the extent that we find that petitioners are liable for the sec. 6662(a) accuracy-related penalty for an underpayment of tax attributable to negligence or disregard of rules or regulations, Mr. Cvancara did not contribute to such negligence or disregard of rules or regulations because respondent prohibited him from participating in Desert Academy's finances and tax return preparation.

**[\*50]** required to be shown on the return or \$5,000, <u>see</u> sec. 6662(d)(1)(A),

petitioners are liable for a section 6662(a) penalty for an underpayment of tax

attributable to a substantial understatement of income tax.

We have considered the parties' remaining arguments, and to the extent not

discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate order will be</u>

<u>issued, and decision will be entered</u>

<u>under Rule 155</u>.